HOCKER, Appellee,

v.

HOCKER, Appellant.

[Cite as *Hocker v. Hocker*, 171 Ohio App.3d 279, 2007-Ohio-1671.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 21559.

Decided April 6, 2007.

L. Anthony Lush, for appellee.

Jeffrey D. Slyman, for appellant.

BROGAN, Judge.

{¶ 1} Defendant-appellant, Guy M. Hocker, appeals from the judgment of the Common Pleas Court of Montgomery County, Division of Domestic Relations, wherein the court overruled Guy's objections to the June 23, 2005 magistrate decision and permanent order sustaining the motion of plaintiff-appellee, Linda J. Hocker, to clarify the final judgment and divorce decree and ordering an amended qualified domestic relations order ("QDRO").

{¶ 2} The Hockers were divorced on December 28, 2001. Throughout most of the parties' marriage, Guy worked for Delphi Automotive Systems ("Delphi"). In the final divorce decree, the trial court provided the following concerning Guy's retirement benefits from Delphi:

{¶ 3} "15. <u>RETIREMENT.</u> A Qualified Domestic Relations Order (QDRO) will issue to the Delphi Investment Security Plan (ISP) through Fidelity Investments wherein the Wife will receive one-half (½) of the amount as of September 13, 2001, as well as any interest and accretions thereon.

{¶ 4} "Further, a second QDRO will issue to the Delphi Personal Savings Plan (PSP), also managed by Fidelity Investments, wherein the Wife will receive one-half (½) of the value of the PSP as of September 13, 2001, as well [sic] any interest and accretions thereon.

{¶ 5} "Further, a QDRO will issue to the Plan Administrator at Delphi for the Husband's Retirement Plan, as well as any interest and accretions thereon.

{¶ 6} "The formula that shall be utilized in said QDRO's shall be as follows: The Wife shall receive one-half (½) of the years of marriage (26 years) divided by the years of service." (Underlining sic.)

{¶ 7} The parties filed a judgment entry stipulated QDRO on April 15, 2003. Included within this QDRO was a division of the benefits in the Delphi hourly rate pension plan. On July 14, 2003, the plan administrator rejected the QDRO on the grounds that the administrator could not understand the amount of benefits to be paid to the alternate payee, Linda. Subsequently, Linda submitted a second QDRO, which Guy refused to sign.

{¶ 8} Linda filed a motion for clarification of the divorce decree in September 2004. Specifically, Linda asked the court to address the definition of "accrued benefits" and whether this term included Guy's interests in early-retirement supplements, interim supplements, and temporary benefits.

{¶ 9} Hearings were held on January 25 and April 26, 2005, during which both parties testified as to their intent underlying the division of Guy's retirement benefits from Delphi in the original divorce decree. Linda stated that she understood that she would receive one-half of Guy's retirement from the Delphi hourly retirement plan "when he gets it." Furthermore, Linda testified that she was unaware of her husband's reasons for objecting to early-retirement supplements, interim supplements, and temporary benefits being included in the divorce decree's allocation of Guy's pension. In support of her position, Linda presented a letter from Guy's attorney dated September 14, 2002, which provided that an attached QDRO would be forwarded to Guy for his signature. Provisions of that QDRO designated both early-retirement subsidies and survivorship rights to Linda. Guy testified, however, that this QDRO was not the final draft approved by him. When asked whether it was suggested during the negotiations that Linda purchase a life insurance policy on Guy as a replacement for survivor benefits—funds obtained from a reduction in Guy's retirement income to be allocated to Linda in the event of his death—Linda provided that she understood this to be only an extra option. Although no policy was in effect at the time of the hearings, Linda stated that Guy had provided the necessary paperwork and received a physical examination in order to effectuate the policy.

{¶ 10} In contrast, Guy testified that he understood that Linda would receive one-half of his basic retirement benefits. According to Guy, this did not include supplemental benefits such as early-retirement supplements or interim supplements, which he categorized as income benefits instead of retirement benefits. Likewise, Guy provided that the life insurance policy was to serve as a substitute for survivor benefits. Guy presented a letter from John Bosse, a financial consultant hired by Guy, to illustrate his position. In the letter, Bosse made the

following statements regarding the proposed QDRO that Guy refused to sign and regarding the parties' negotiations:

{¶ 11} "1. The first paragraph states to be shared as accrued benefits, which is correct. Later in the QDRO, it states the alternate payee is to share in the early retirement supplement, interim supplement and temporary benefits. 'Accrued benefits' does not include supplement benefits.[1]

{¶ 12} "2. The QDRO states that the alternate payee is to received [sic] surviving spouse benefits. This is not what was part of their agreement.

{¶ 13} "3. The QDRO states that the alternate payee is to receive pre and post survivorship rights. This is not what was part of their agreement."

{¶ 14} Bosse was also present at the hearing to testify. He stated that he had been involved in discussions with Guy, his attorney, and Linda's prior attorney during the final divorce hearing in September 2001. However, at the motion-for-clarification hearing, the trial court refused to allow his testimony as to the parties' discussions regarding Guy's retirement plan, including the issue of survivor benefits.

{¶ 15} Following the hearings, a magistrate filed a decision and permanent order sustaining Linda's motion to clarify the final judgment and divorce decree regarding the defined benefits plan. Furthermore, the magistrate ordered the following:

{¶ 16} "Plaintiff shall prepare and file with this court an Amended Qualified Domestic Relations Order, which will specify and divide all of defendant's accrued defined pension benefits, including basic and supplemental benefits by computing the ratio of defendant's number of years of employment during the marriage to the total years of defendant's employment and awarding plaintiff fifty percent (50%) of said computation."

{¶ 17} Guy subsequently filed objections to the magistrate's decision. On March 28, 2006, the trial court overruled these objections and sustained the findings of the magistrate. Guy filed a timely notice of appeal.

{¶ 18} On appeal, Guy raises the following assignments of error:

{¶ 19} "I. The court erred by modifying the December 28, 2001 settlement without reserving subject matter jurisdiction.

---

1. As a joint exhibit, the parties submitted a document detailing QDRO procedures with Delphi available to Guy at the time of the divorce. Under the heading "Amount Assigned to Alternate Payee," the document defines "accrued benefits" as lifetime benefits only. Explicitly, the definition excludes early-retirement supplements, interim supplements, and temporary benefits under the Delphi hourly-rate employees pension plan.

{¶ 20} "II. The court erred in their interpretation of the benefits contained in the December 28, 2001 divorce decree.

{¶ 21} "III. The court erred by prohibiting John Bosse's testimony which dealt with the intent of the appellee and appellant when negotiating their settlement."

I

{¶ 22} In his first assignment of error, Guy contends that the trial court erred in modifying the parties' original divorce decree through an amended QDRO, where the trial court failed to reserve subject matter jurisdiction in the decree. For the following reasons, we find that this assignment of error lacks merit.

{¶ 23} The magistrate in this case relied on our holding in *Gearhart v. Gearhart* (Nov. 19, 1999), Montgomery App. No. 17725, 1999 WL 1043894, to find that a determination of whether supplemental benefits should be included in the division of a pension is not a modification of a property division prohibited by R.C. 3105.171(I), but a clarification of the court's order distributing the pension.

{¶ 24} In *Gearhart*, we held that the trial court was in the best position to determine whether a final divorce decree and QDROs needed clarification in order to equitably divide a party's retirement benefits. Id. at *5. There, the final divorce decree and amended QDRO did not address the manner in which the husband's retirement would be divided if he elected early retirement. Id. at *4. Instead, these orders spoke in broad terms of "accrued benefits." Id.

{¶ 25} This court found that a trial court has broad discretion to clarify ambiguous language in a separation agreement by considering the intent of the parties and the equities involved. Id., citing *Weller v. Weller* (1996), 115 Ohio App.3d 173, 179, 684 N.E.2d 1284. We stated that "[r]etirement benefits or the right to receive retirement benefits accumulated during the marriage are marital property, which the court must equitably divide and distribute between husband and wife in a divorce. See R.C. 3105.171(A)(3)(a)(i). The court has broad discretion in dividing the benefit. An equal division is presumed under the statute to be an equitable division. In order to reach an equitable result, the court should attempt to preserve the pension or retirement asset in order that each party can procure the most benefits, while disentangling the parties' economic partnership so as to create a conclusion and finality to their marriage. *Hoyt v. Hoyt* (1990), 53 Ohio St.3d 177 [181], 559 N.E.2d 1292. *Hoyt* stressed that in making a division of the retirement asset the court 'must understand the intricacies and terms of any given plan, and if necessary, require both of the parties to submit evidence on the matter to make an informed decision.' " Id. at *5.

{¶ 26} Here, the magistrate determined that the court's provision for dividing Guy's hourly pension was ambiguous and required clarification. We do not find this determination to be an abuse of discretion. An ambiguity exists when a provision in an order or decree may reasonably be interpreted to have more than one meaning. *McKinney v. McKinney* (2001), 142 Ohio App.3d 604, 609, 756 N.E.2d 694. The plain language of the parties' divorce decree governing the division of retirement benefits simply provided that a QDRO will issue for Guy's retirement plan at Delphi, including interest and accretions. Based on this language, it is not unreasonable for both the parties and Delphi's plan administrator to question whether this order also included early-retirement benefits, interim benefits, and survivor benefits. Thus, under our holding in *Gearhart*, the court acted within its authority to sustain Linda's motion for clarification and to conduct hearings in order to ascertain the intent of the parties and make an equitable division of the pension.

{¶ 27} Guy argues that *Gearhart* is not applicable because in that case, the court addressed a motion for relief from judgment under Civ.R. 60(B), and the husband had already retired. These distinctions, however, do not influence our findings in this matter. See *Coterel v. Coterel*, Montgomery App. No. 20899, 2005-Ohio-5577, 2005 WL 2697482, at ¶ 14.

{¶ 28} Therefore, we find that the trial court acted within its discretion in clarifying the court's order distributing Guy's retirement benefits. Accordingly, Guy's first assignment of error is overruled.

## II

{¶ 29} Guy's third assignment of error is taken out of order to facilitate our determination of the issues presented in this appeal. In his third assignment of error, Guy argues that the trial court erred in refusing Bosse's testimony regarding the parties' negotiations and settlement of the final divorce decree. We agree.

{¶ 30} A trial court has broad discretion in determining the admissibility of evidence, "so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.* (1991), 58 Ohio St.3d 269, 271, 569 N.E.2d 1056. An appellate court reviewing the trial court's admission or exclusion of evidence must limit its review to whether the lower court abused its discretion. Id. An abuse of discretion is not merely an error of law or judgment, but a decision that was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. However, an abuse of discretion most commonly arises from a decision that was unreasonable. *Schafer v. RMS Realty* (2000), 138 Ohio App.3d 244, 300, 741 N.E.2d 155, citing *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*

(1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597. Decisions are unreasonable if they lack a sound reasoning process to support them. Id.

{¶ 31} Evid.R. 408 provides that "[e]vidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."

{¶ 32} Evid.R. 408 encourages parties to settle disputes by making offers to compromise based on factors besides potential liability. *Schafer*, 138 Ohio App.3d at 295, 741 N.E.2d 155. This rule, however, makes exceptions when evidence of parties' settlement negotiations or compromise is offered for purposes other than proving liability or invalidity. Id. For example, this court has sustained a trial court's admission of settlement discussions offered to demonstrate the defendants' motives. See id. at 295–96, 741 N.E.2d 155. See, also, *Krysa v. Sieber* (1996), 113 Ohio App.3d 572, 578, 681 N.E.2d 949 (approving the admission of evidence to show that a mathematical error had occurred in the calculations of property division).

{¶ 33} Here, the trial court excluded Bosse's testimony regarding discussions with Guy about retirement benefits, spousal support, and survivor benefits. Specifically, Bosse was prevented from testifying as to discussions with Guy about the division of his pension and how it might affect spousal support. In addition, the trial court excluded any testimony concerning discussions demonstrating Guy's motive for obtaining a life insurance policy.

{¶ 34} We find that it was an abuse of discretion to exclude this testimony. Bosse's testimony was not being offered to prove the liability for or validity of the claim that Linda was entitled to one-half of Guy's retirement benefits. The parties did not dispute this fact. Instead, the testimony was being offered to assist the trial court in assessing the value of the pension, i.e., whether equitably and intentionally it included early-retirement and/or interim supplemental benefits. Furthermore, the question why a life insurance policy on Guy's life was proposed during the divorce negotiations was at issue. We believe that the parties were entitled to offer evidence of their negotiations demonstrating their motives for that action.

{¶ 35} Accordingly, Guy's third assignment of error is sustained. The decision of the trial court to exclude Bosse's testimony is reversed, and the cause is remanded for further proceedings consistent with this opinion.

### III

{¶ 36} Guy asserts in his second assignment of error that the trial court erred in its interpretation of the divorce decree dividing his Delphi hourly rate pension plan. He argues that the December 28, 2001 divorce decree applies only to his basic retirement benefit and not to any supplemental early-retirement benefits or survivor benefits. According to Guy, his contention is supported by the terms of the decree itself, as well as by the intentions of the parties.

{¶ 37} Based on our disposition of Guy's third assignment of error, this assignment of error is moot.

{¶ 38} The judgment of the trial court is affirmed in part and reversed in part, and the matter is remanded for further proceedings consistent with this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

WOLFF, P.J., and DONOVAN, J., concur.