**HOCKER, Appellee,**

v.

**HOCKER, Appellant.**

[Cite as *Hocker v. Hocker,* 188 Ohio App.3d 755, 2010-Ohio-2835.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 23568.

Decided June 18, 2010.

L. Anthony Lush, for appellee.

Mark Edward Stone, for appellant.

FROELICH, Judge.

{¶ 1} Guy Hocker appeals from a judgment of the Montgomery County Court of Common Pleas, Domestic Relations Division, which clarified a final judgment and decree of divorce and ordered that all of Mr. Hocker's pension benefits, including supplemental benefits, be divided with his former wife proportionally to the term of their marriage. For the reasons that follow, the trial court's judgment is affirmed.

I

{¶ 2} Guy and Linda Hocker were divorced in 2001 after 26 years of marriage. Mr. Hocker worked at Delphi during much of the marriage. With respect to the division of retirement benefits, the final judgment and decree of divorce provided:

{¶ 3} "15. *RETIREMENT.* A Qualified Domestic Relations Order (QDRO) will issue to the Delphi Investment Security Plan (ISP) through Fidelity Investments wherein the Wife will receive one-half (½) of the amount as of September 13, 2001, as well as any interest and accretions thereon.

{¶ 4} "Further, a second QDRO will issue to the Delphi Personal Savings Plan (PSP), also managed by Fidelity Investments, wherein the Wife will receive one-half (½) of the value of the PSP as of September 13, 2001, as well [sic] any interest and accretions thereon.

{¶ 5} "Further, a QDRO will issue to the Plan Administrator at Delphi for the Husband's Retirement Plan, as well as any interest and accretions thereon.

{¶ 6} "The formula that shall be utilized in said QDROs shall be as follows: The Wife shall receive one-half (½) of the years of marriage (26 years) divided by the years of service."

{¶ 7} The decree also provided that Mr. Hocker would receive one-half of the amount vested in Mrs. Hocker's 401(K) plan as of September 13, 2001, and that Mr. Hocker would cooperate in Mrs. Hocker's purchase of a life insurance policy on his life.

{¶ 8} A stipulated qualified-domestic-relations order was approved by the trial court on April 15, 2003. The QDRO provided that Mrs. Hocker (the alternate payee) would receive 50 percent of the marital portion of Mr. Hocker's (the participant's) "accrued benefits" under the retirement plan. However, the Delphi pension-plan administrator subsequently rejected the QDRO on the ground that the administrator could not understand the amount of benefits to be paid to Mrs. Hocker. Mrs. Hocker submitted a second QDRO, which Mr. Hocker refused to sign.

{¶ 9} In September 2004, Mrs. Hocker filed a motion for clarification of the divorce decree, particularly whether her interest in Mr. Hocker's retirement benefits included a share of supplemental benefits, such as early retirement and survivorship benefits. The magistrate held a hearing, at which Mr. Hocker testified that he understood that Mrs. Hocker would receive one-half of his basic retirement benefits, and Mrs. Hocker testified, in essence, that half of Mr. Hocker's supplemental benefits should have been included in her benefits. The magistrate refused to allow certain testimony from John Bosse, a financial consultant who had been hired by Mr. Hocker and who had drafted the original QDRO, as to the parties' discussions during the divorce proceedings about Mr. Hocker's retirement plan.

{¶ 10} The magistrate sustained Mrs. Hocker's motion to clarify the final judgment and decree of divorce and ordered Mrs. Hocker to prepare an amended QDRO "which will specify and divide all of [Mr. Hocker's] accrued defined pension benefits, including basic and supplemental benefits."

{¶ 11} Mr. Hocker filed objections to the magistrate's decision, but the trial court overruled the objections and adopted the magistrate's decision. In April 2007, Mr. Hocker filed his first notice of appeal. *Hocker v. Hocker*, Montgomery App. No. 21559.

{¶ 12} In his first appeal, Mr. Hocker challenged the modification of the QDRO because the trial court had failed to reserve jurisdiction to do so, and he challenged the trial court's refusal to allow Bosse to testify about the parties' negotiations prior to agreeing on the terms of the final divorce decree. We agreed with his arguments in part and rejected them in part. *Hocker v. Hocker,*

171 Ohio App.3d 279, 2007-Ohio-1671, 870 N.E.2d 736. With respect to the clarification of the prior order, we held that "a trial court has broad discretion to clarify ambiguous language * * * by considering the intent of the parties and the equities involved." Id. at ¶ 25, citing *Gearhart v. Gearhart* (Nov. 19, 1999), Montgomery App. No. 17725, 1999 WL 1043894. Thus, we concluded that the trial court had not abused its discretion in finding that the original QDRO language was ambiguous as to whether it included early retirement benefits, interim benefits, and survivor benefits and had acted within its authority to sustain the motion for clarification, to conduct hearings on the parties' intent, and to make an equitable division of the pension. Id. at ¶ 26.

{¶ 13} We also concluded, however, that the trial court had erred in excluding Bosse's testimony, because it was not offered to prove or disprove the validity of Mrs. Hocker's claim. Rather, it was offered to assist the trier of fact in assessing the value of the pension and whether, equitably and intentionally, it included supplemental benefits, and to explain why a life insurance policy on Mr. Hocker's life was proposed during the divorce negotiations. (Mr. Hocker claimed that Mrs. Hocker "forfeited" her claim to survivor benefits and early retirement subsidies in exchange for a life insurance policy he "agreed to create" for Mrs. Hocker, although Mrs. Hocker was to pay for the policy.) We affirmed in part, reversed in part, and remanded "for further proceedings consistent with this opinion."

{¶ 14} After the matter was remanded, Mr. Hocker filed a motion to correct a clerical error, pursuant to Civ.R. 60(A). He contended that the provision in the divorce decree which provided that he would cooperate with the purchase by Mrs. Hocker of a life insurance policy on his life had been negotiated in exchange for any right of Mrs. Hocker to be designated as the beneficiary of survivorship benefits payable under the Delphi retirement plan. He sought to have the trial court correct the judgment to reflect this agreement.

{¶ 15} Mrs. Hocker filed a motion in limine to limit the testimony at a new hearing to that offered by Bosse, whose testimony Mr. Hocker had sought to offer at the prior hearing, and to exclude the testimony of Jeffrey Slyman, Mr. Hocker's attorney in the divorce proceedings. The magistrate reviewed the record of the proceedings and heard Bosse's testimony. The magistrate issued the requested order in limine with respect to Slyman's testimony.

{¶ 16} After considering Bosse's testimony, the magistrate concluded that it was not entitled to significant weight:

{¶ 17} "Mr. Bosse's recollection of the parties' negotiations in 2001 may be somewhat suspect. Although the divorce negotiations took place in 2001, the within hearing was six years later. The claim by Mr. Bosse that the parties agreed to divide *only* [Mr. Hocker's] 'accrued benefits' and not his 'total benefits'

is not supported by the transcript of the hearing or the original QDRO prepared by Mr. Bosse one year later. The question is whether or not Mr. Bosse's recollections are more accurate six years following the negotiations than one year following negotiations. The issue here is not a mathematical or typographical error. This involves a substantive change in the QDRO document originally prepared by Mr. Bosse. According to [Mr.] Bosse, the issue of 'accrued' vs. 'total' benefits was discussed in detail and at length by the parties and their counsel. Yet, the agreement read into the record and acknowledged by both counsel and parties never defined the pension benefits as 'accrued' benefits. It is the finding of this magistrate that Mr. Bosse's testimony has not resulted in further clarification of the parties' motives."

{¶ 18} The magistrate also found that the discussion of a life insurance policy had had no bearing on the pension negotiations.

{¶ 19} Mr. Hocker filed objections to the magistrate's decision in June 2008 and supplemental objections, with leave of court, in October 2008. These objections challenged the magistrate's decision not to allow Slyman to testify at the hearing, the substance of the decision about pension benefits, and the magistrate's refusal to "correct" the record regarding the purpose of the life insurance policy.

{¶ 20} The trial court "thoroughly and independently reviewed the record," overruled Mr. Hocker's objections, and filed a decision and judgment consistent with the magistrate's conclusions. The trial court found that Bosse's recollections six years after the final hearing on the complaint for divorce were not supported by the evidence and that there was "no credible evidence to support the allegation that the original QDRO did not reflect the agreement of the parties." The court concluded that all of Mr. Hocker's benefits from Delphi, including basic and supplemental benefits, should be divided equally in proportion to the term of the marriage. The court also found "no support for the allegation that the [life insurance] policy was a 'trade' for the relinquishment by [Mrs. Hocker] of total benefits under the Delphi pension plan." The court ordered that an amended QDRO be filed in accordance with its decision.

{¶ 21} Mr. Hocker appeals, raising three assignments of error, which we will address in an order that facilitates our discussion.

## II

{¶ 22} The third assignment of error states:

{¶ 23} "The trial court's failure to grant appellant's motion to correct clerical error constitutes an abuse of discretion."

{¶ 24} Mr. Hocker contends that the parties' agreement in the initial divorce proceedings, which was read into the record by Mrs. Hocker's attorney, demonstrated that "in lieu of [Mrs. Hocker's] being entitled to receive any portion of the survivor annuity payable under the Delphi Retirement Plan she would instead be entitled to purchase a term life insurance policy on [Mr. Hocker's] life." By contrast, the final judgment and decree of divorce provided that Mrs. Hocker would be allowed to own a life insurance policy on Mr. Hocker "to protect [her] interest in spousal support," that Mr. Hocker would cooperate in completing documents and physical examinations for this purpose, and that Mrs. Hocker would pay for the policy. Mr. Hocker claims that the trial court should have "corrected" the judgment to clarify the purpose of the life insurance policy.

{¶ 25} Mr. Hocker relies on the following statement by Mrs. Hocker's attorney at the divorce hearing:

{¶ 26} "The Wife is going to buy a policy, a term life insurance policy on the husband's life. He will—has signed up for the application today. He will cooperate, and take the physical. It is—because we can't do the SBP, because that one case came out. This is in order to insure that she receives her share of his retirement."

{¶ 27} Mr. Hocker claims that "SBP" refers to " 'Survivor's Benefit Plan," "a term used by the military retirement system but which has also come to be used by some as shorthand for survivor annuities paid pursuant to private pension plans."

{¶ 28} Civ.R. 60(A), upon which Mr. Hocker's motion was based, states:

{¶ 29} "Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders."

{¶ 30} "Civ.R. 60(A) permits a trial court, in its discretion, to correct clerical mistakes which are apparent on the record, but does not authorize a trial court to make substantive changes in judgments. * * * The term 'clerical mistake' refers to a mistake or omission, mechanical in nature and apparent on the record which does not involve a legal decision or judgment." *State ex rel. Litty v. Leskovyansky* (1996), 77 Ohio St.3d 97, 100, 671 N.E.2d 236; *Blust v. Lamar Advertising of Mobile, Inc.*, 183 Ohio App.3d 478, 2009-Ohio-3947, 917 N.E.2d 373, at ¶ 20. Such "entries are limited in proper use to reflecting what the court actually decided, not what the court might or should have decided or what the court intended to decide." *State ex rel. Fogle v. Steiner* (1995), 74 Ohio St.3d 158, 164, 656 N.E.2d 1288.

{¶ 31} In a case cited with approval in *Leskovyansky*, the Ninth District Court of Appeals wrote:

{¶ 32} "The basic distinction between clerical mistakes that can be corrected under Civ.R. 60(A) and substantive mistakes that cannot be corrected is that the former consists of 'blunders in execution' whereas the latter consists of instances where the court changes its mind, either because it made a legal or factual mistake in making its original determination, or because, on second thought, it has decided to exercise its discretion in a different manner." *Londrico v. Delores C. Knowlton, Inc.* (1993), 88 Ohio App.3d 282, 623 N.E.2d 723; *Blust* at ¶ 21–22.

{¶ 33} Civ.R. 60(A) is not an appropriate means for the type of "correction" in the record that Mr. Hocker sought. Mr. Hocker's motion required the trial court to interpret the parties' intent and the statement that was read into the record. Such a change cannot be fairly characterized as a "mechanical" correction that does not involve a legal decision or judgment. Civ.R. 60(A). What was meant by the attorney's reference to an "SBP" and her statement indicating that the parties "can't do the SBP" is not apparent. Moreover, it is unclear how a life insurance policy which, according to the final decree, was to be paid for by Mrs. Hocker, would "insure that she receives her share of his retirement." In other words, the attorney's statement on which Mr. Hocker relies does not demonstrate what the parties intended to accomplish through the purchase of the life insurance policy or that the language contained in the divorce decree misrepresented the agreement of the parties. Therefore, a motion to clarify pursuant to Civ.R. 60(A) was inappropriate.

{¶ 34} The third assignment of error is overruled.

### III

{¶ 35} The first assignment of error states:

{¶ 36} "The trial court's refusal to permit Jeffrey Slyman to testify constitutes an abuse of discretion."

{¶ 37} Mr. Hocker contends that on remand, the trial court abused its discretion in excluding the testimony of his original divorce attorney, Jeffrey Slyman, regarding the intent of the parties with respect to supplemental benefits and a life insurance policy on Mr. Hocker's life naming Mrs. Hocker as the beneficiary. Mr. Hocker claims that the trial court failed to appreciate the interplay between the life insurance and survivor benefits and that it should have permitted his former attorney to testify about the parties' negotiations on this point. Mr. Hocker also argues that the trial court's statement that Slyman's proffered testimony on the issue "would not alter the court's decision" indicates

that "the trial court chose to ignore such proffered testimony without stating why."

{¶ 38} In our prior opinion, we found that the trial court had abused its discretion in excluding Bosse's testimony for the following reason:

{¶ 39} "Bosse's testimony was not being offered to prove the liability for or validity of the claim that [Mrs. Hocker] was entitled to one-half of [Mr. Hocker's] retirement benefits. The parties did not dispute this fact. Instead, the testimony was being offered to assist the trial court in assessing the value of the pension, i.e., whether equitably and intentionally it included early-retirement and/or interim supplemental benefits. Furthermore, the question why a life insurance policy on [Mr. Hocker's] life was proposed during the divorce negotiations was at issue. We believe that the parties were entitled to offer evidence of their negotiations demonstrating their motives for that action."

{¶ 40} On remand, the magistrate permitted Mr. Hocker to call Bosse, but did not permit Mr. Hocker to call his former attorney, Slyman, to testify about any negotiations on supplemental benefits and life insurance. In the order granting Mrs. Hocker's motion in limine with respect to Slyman's testimony, the magistrate did not elaborate on her reasons for not permitting him to testify. In the trial court's judgment, however, which overruled Mr. Hocker's objection to the in limine ruling, the trial court stated:

{¶ 41} "[Mr. Hocker] argues that the magistrate erred by granting [Mrs. Hocker's] motion in limine to exclude the testimony of Attorney Jeffrey Slyman. Mr. Slyman was defendant's attorney of record at the time of the final hearing [in the initial divorce proceedings]. The court finds that the hearing on remand was specifically targeted to clarify the testimony of [Mr. Hocker's] expert witness, Mr. Bosse. Attorney Slyman represented [Mr. Hocker] throughout the proceedings. He [Slyman] did not object or clarify the record during the September 13, 2001 hearing. Attorney Slyman continued to represent [Mr. Hocker] up to the appearance of attorney Stone in this matter." (Stone began to represent Mr. Hocker two months after our remand.)

{¶ 42} In our view, the trial court's decision on remand to hear only Bosse's testimony and to exclude additional testimony as to the parties' motives during their negotiations was inconsistent with our conclusion that "the parties were entitled to offer evidence of their negotiations demonstrating their motives." However, the trial court's confusion about our intent on remand was rendered harmless by the fact that it considered the proffer of Slyman's testimony and by its conclusion that his testimony would not have altered the outcome of the case.

{¶ 43} A proffer is, by definition, an offer of evidence. If error is predicated upon a ruling which excludes evidence (such as Slyman's testimony), the sub-

stance of the evidence must be made known to the court by offer. Evid.R. 103(A)(2). "The purpose of requiring the proponent of the excluded evidence to make an 'offer of proof' or 'proffer' regarding the evidence is to allow a reviewing court to determine whether the proponent of the evidence has been prejudiced by its exclusion." *Baird v. Gillispie* (Jan. 21, 2000), Miami App. No. 99–CA–12, 2000 WL 43493.

{¶ 44} Mr. Hocker's attorney proffered that Slyman would have testified to the following (and we would assume that this is a version most favorable to Mr. Hocker, since it was proffered by him and not subject to cross-examination):

{¶ 45} "Mr. Slyman himself personally had conversations with Deborah Schram [Mrs. Hocker's attorney] on matter or what the parties would agree to or not agree to. Specifically with regard to the issues of early retirement subsidy, the survivor benefits as those two issues related to Mr. Hocker's General Motors defined benefits pension.

{¶ 46} "Mr. Slyman had in that same context discussions with Mrs. Schram regarding related issues of spousal support and the issue of cohabitation and that specifically for purposes of reflecting or going to the issue of intent of the parties Jeff Slyman specifically told Deb Schram and Deb Schram agreed and expressed agreement directly to Jeff Slyman that her client was not going to be receiving any portion of the survivor benefits.

{¶ 47} "That the intention was her client would not refuse any share of the early retirement supplement and that statements were made in the context of Jeff disclosing to Ms. Schram that he had evidence that had been gathered by a private investigator with regards to Mrs. Hocker's cohabitation, and if the matter went to trial there was a risk as communicated to Ms. Schram that the evidence would support no award of spousal support.

{¶ 48} "And in exchange for not presenting that evidence the agreement was as I've stated that Miss Hocker would not receive any share of the survivor benefits and she would not receive any share of the early retirement supplement.

{¶ 49} "Additionally in relation to Mrs. Hocker waiving her interest in the early retirement supplement and the conversations had including Mr. Bosse and Jeff Slyman regarding their agreement of the supplemental benefits information that is not part of the pension.

{¶ 50} "And getting back to how this ties into the spousal support. If Mr. Hocker were to retire early and receive the supplement, of course, that would be income to him that would be a factor at that time if he attempted to reduce his spousal support.

{¶ 51} "And that for all of these reasons Ms. Schram agreed and the agreement was expressed in the presence of Mrs. Hocker that she was not going to

receive any portion of the survivor benefits and not going to receive any portion of the early retirement supplements.

{¶ 52} "And Jeff would also confirm that the request at one point in the negotiation was that Mr. Hocker cooperated in permitting Mrs. Hocker to purchase a life insurance policy that would take the place of any survivor benefits. Of course, that policy would have had to be purchased and paid for by Mrs. Hocker.

{¶ 53} " * * *

{¶ 54} "Lastly, Jeff would testify that when Ms. Schram made the comments that she did on the record that are reflected in what we have identified as a Joint Exhibit the transcript of what was read into the record that day and the final hearing of this he believed those statement she made were consistent with the agreements and the statements that had been made on the outside of the court and that specifically he interpreted her reference to by the SBP—that's an acronym as referenced to the survivor benefits—that everyone had agreed Mrs. Hocker was waiving any interest in.

{¶ 55} " * * *

{¶ 56} " * * * * As part of those discussions about the evidence on cohabitation and spousal support and the overall agreement there were also discussions about the appraisal of the marital residence, that Jeff was of the opinion was too high and that there would have been some litigation involving that had the matter gone to trial.

{¶ 57} "And in exchange for the agreements that were being made or concessions that were being made with regard to the survivor benefits and with regard to the early retirement supplements that—that Mr. Hocker would not pursue any attempt to lessen the amount of equity that he was receiving in the real estate. And that's it."

{¶ 58} Although the court overruled the objections, including to the magistrate's exclusion of Slyman's testimony, it did conduct an independent review of the evidence and record as required by Civ.R. 53(D)(4)(d). In doing so, the trial court considered Slyman's testimony, as reflected by its finding that "the proffered testimony would not alter the court's decision." The court's comments reflect its view that because Slyman "did not object or clarify the record" in 2001 when the agreement was read into the record, his testimony many years later that the agreement did not accurately express the parties' intentions was not entitled to significant weight.

{¶ 59} Moreover, it appears to us that Slyman's proffered statements about the parties' negotiations contradicted or expanded upon the agreement that was

presented to the court, although Slyman had stated on the record at the original hearing that the agreement that had been read into the record was accurate. For example, pursuant to the agreement that was read into the record, spousal support was subject to the continuing jurisdiction of the court and "shall be subject to change upon the Wife's cohabitation with an unrelated adult male who helps provide for her support." This language, which Slyman made a point of including when the parties read their agreement into the record, contradicts Slyman's claim, in the proffered testimony, that Mr. Hocker waived his right to use Mrs. Hocker's alleged cohabitation against her in exchange for her waiver of survivorship rights. In fact, under the terms of the agreement, Mrs. Hocker's spousal support could still be subject to change due to cohabitation with another man. The trial court reasonably concluded that had testimony consistent with the proffer been offered at the hearing, the testimony would not have altered its decision.

██ {¶ 60} Under this assignment of error, Mr. Hocker also faults the trial court for not explaining why it chose to "ignore" the proffered testimony. As stated above, the court did not ignore the proffered testimony, but rather read and considered it, albeit not to the end sought my Mr. Hocker. Resolution of the conflicting evidence was a matter for the trial court, which was in the best position to evaluate the evidence and assess the credibility of witnesses; a trial court is not required to explain why it weighs some factors or testimony more heavily than others, and an appellate court should not second-guess a trial court's factual determination unless there has been an abuse of discretion. *Rock v. Cabral* (1993), 67 Ohio St.3d 108, 112, 616 N.E.2d 218; *Aldo v. Angle,* Clark App. No. 09–CA–103, 2010-Ohio-2008, 2010 WL 1819085, at ¶ 33. An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. We cannot find that Mr. Hocker has been prejudiced by the manner in which Slyman's testimony was considered, and we are unpersuaded that the trial court abused its discretion in weighing the evidence as it did.

{¶ 61} The first assignment of error is overruled.

## IV

██ {¶ 62} Mr. Hocker's second assignment of error states:

{¶ 63} "The trial court's interpretation of the language of the final decree as awarding to appellee a portion of the early retirement and/or interim supplemental pension benefits constitutes an abuse of discretion."

{¶ 64} Mr. Hocker contends that the trial court should have credited the evidence that the parties had not intended to include "early retirement supple-

ments, interim supplements, or temporary benefits" in the QDRO, because Bosse's testimony on these points was "unrefuted."

{¶ 65} The trial court was in the best position to determine whether a final divorce decree and QDRO needed clarification in order to equitably divide a party's retirement benefits. *Gearhart,* supra; *Hocker,* 171 Ohio App.3d 279, 2007-Ohio-1671, 870 N.E.2d 736, at ¶ 24. A trial court has broad discretion to clarify ambiguous language in a separation agreement by considering the intent of the parties and the equities involved. *Gearhart,* supra, citing *Weller v. Weller* (1996), 115 Ohio App.3d 173, 179, 684 N.E.2d 1284. Absent an abuse of discretion, that factual determination will not be disturbed on appeal. *Rock,* 67 Ohio St.3d at 112, 616 N.E.2d 218. "[A]n abuse of discretion most commonly arises from a decision that was unreasonable." *Wilson v. Lee,* 172 Ohio App.3d 791, 2007-Ohio-4542, 876 N.E.2d 1312, at ¶ 11. Decisions are unreasonable if they are not supported by a sound reasoning process. *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.* (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597.

{¶ 66} Mr. Hocker asserts that Bosse's testimony was "unrefuted" and that the trial court erred in concluding that the divorce decree did not accurately reflect the parties' negotiations or did not equitably divide their property. This claim disregards the trial court's role in assessing the credibility of the evidence. The trial court reasonably relied on the language of the parties' original agreement and the QDRO that was prepared therefrom by Bosse only one year after the parties' divorce as a more reliable reflection of the parties' agreement than Bosse's or Slyman's recollections—six or more years later—of the parties' discussions. The trial court reasonably gave significant weight to the language adopted by the parties at the time of the divorce. Moreover, based on the evidence presented, the trial court could have reasonably concluded that the provision permitting Mrs. Hocker to purchase a life insurance policy did not offset her right to a share of survivorship benefits, especially insofar as Mrs. Hocker had to purchase the insurance policy with her own money.

{¶ 67} Similarly, even considering and crediting Slyman's testimony, the trial court could have reasonably questioned the claim that Mrs. Hocker had waived her right to survivorship benefits because Mr. Hocker threatened to present evidence of cohabitation at the hearing. As discussed above, the final judgment gives the trial court continuing jurisdiction over spousal support and provides that it can be modified if Mrs. Hocker cohabitates with another adult male. The trial court's continuing ability to modify spousal support if Mr. Hocker raises the issue of cohabitation casts doubt on his claim that Mrs. Hocker exchanged her interest in a share of his survivorship benefits to avoid the presentation of evidence on this issue.

{¶ 68} The trial court has broad discretion to clarify ambiguous language, and in doing so, it must start with the words the parties chose to use and the record they chose to make. The trial court did not abuse its discretion in failing to be persuaded by Mr. Hocker's evidence that Mrs. Hocker had waived any claim to his supplemental pension benefits.

{¶ 69} The second assignment of error is overruled.

V

{¶ 70} The judgment of the trial court is affirmed.

Judgment affirmed.

FAIN and WILLAMOWSKI, JJ., concur.

JOHN R. WILLAMOWSKI, Third District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.