[Cite as *Bass v. Bass*, 2014-Ohio-2667.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

RHONDA SMITH BASS                      :

     Plaintiff-Appellee            :   C.A. CASE NO.   25922

v.                                     :   T.C. NO.   10DR793

MICHAEL C. BASS                        :   (Civil appeal from Common
                                           Pleas Court, Domestic Relations)

     Defendant-Appellant           :

                                       :

        . . . . . . . . . .

**O P I N I O N**

Rendered on the _____20th_____ day of _____June_____, 2014.

        . . . . . . . . . .

DAVID M. McNAMEE, Atty. Reg. No. 0068582, 2625 Commons Blvd., Beavercreek, Ohio 45431
     Attorney for Plaintiff-Appellee

JAY B. CARTER, Atty. Reg. No.0041295, 111 W. First Street, Suite 519, Dayton, Ohio 45402
     Attorney for Defendant-Appellant

        . . . . . . . . . .

FROELICH, P.J.

{¶ 1}   Michael C. Bass appeals from a judgment of the Montgomery County Court of Common Pleas, which entered a final judgment and decree of divorce and divided the marital assets of Mr. Bass and his former wife, Rhonda Smith Bass, n.k.a. Rhonda Smith.

**{¶ 2}** For the following reasons, the judgment of the trial court will be affirmed.

**{¶ 3}** The parties were married in July 1998 and separated in July 2010; no children were born of the marriage. Ms. Smith filed a complaint for divorce in July 2010. In May 2013, the trial court held a hearing on the disputed issues. On September 13, 2013, it filed its final judgment and decree of divorce. Mr. Bass appeals, raising one assignment of error, which challenges the manner in which the trial court divided some of the parties' assets and liabilities.

**{¶ 4}** The assignment of error states:

**The trial court abused its discretion in making a division and distribution of marital assets that was against the manifest weight of the evidence.**

**{¶ 5}** Mr. Bass challenges the trial court's division of marital assets in several respects. The disputed issues were the value of Ms. Smith's retirement account, the disposition of a condo owned by the parties, on which there was no mortgage and in which Ms. Smith's mother lived, and the disposition of the marital home, on which there were two mortgages. Improvements had been made to the marital home; the parties also disputed whether these improvements had been made using funds loaned to Mr. Bass by his son, which the parties were obligated to repay.

*Standard of Review*

**{¶ 6}** A trial court has broad discretion in determining an equitable property division in divorce cases. *Berish v. Berish*, 69 Ohio St.2d 318, 319, 432 N.E.2d 183 (1982), citing *Cherry v. Cherry*, 66 Ohio St.2d 348, 355, 421 N.E.2d 1293 (1981); *Dorsey v. Dorsey*, 2d Dist. Montgomery No. 25436, 2013-Ohio-4237, ¶ 11. A trial court abuses its

discretion when it makes a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). An abuse of discretion most commonly arises from a decision that was unreasonable. *Hocker v. Hocker*, 171 Ohio App.3d 279, 2007-Ohio-1671, 870 N.E.2d 736, ¶ 30 (2d Dist), citing *Schafer v. RMS Realty*, 138 Ohio App.3d 244, 300, 741 N.E.2d 155 (2d Dist.2000). Decisions are unreasonable if they lack a sound reasoning process to support them. *Id.*

*Loan for Improvements to the Marital Home*

{¶ 7} Mr. Bass claims that the trial court erred in concluding that a loan from his son was a gift, or that Ms. Smith had understood it to be such, and in failing to hold Ms. Smith partially responsible for the debt. He acknowledges that there was contradictory evidence as to whether Ms. Smith was involved in the making of the alleged loan, but asserts that the trial court could not have reasonably concluded that Ms. Smith thought the money was a gift. He also argues that, considering the "familial nature of the loan," his repayment of the loan through payments to a third party on his son's behalf should not have been viewed with suspicion by the trial court. He contends that Ms. Smith should not get the benefit of improvements to the house (which was awarded to her), including a swimming pool and a gazebo, without contributing to the payment for the improvements.

{¶ 8} The parties agreed that their marital home had been titled in Ms. Smith's name for several years, because Mr. Bass owed a substantial tax debt and they feared that the IRS or the state would put a lien on the house if it were in Mr. Bass's name. With respect to money obtained from Mr. Bass's son, Ms. Smith testified that she was "not sure" whether the money for improvements to the house was a loan or a gift, and that she had no

knowledge of any repayments being made   (directly or through a third party) to the son.

{¶ 9}    Mr. Bass presented copies of more than 30 money orders (Exhibit D) payable to Citi Mortgage; he claimed that he was repaying his son by repaying a loan taken out on his son's behalf, and that the money orders reflected these payments.   Each money order was for approximately $361.   Mr. Bass acknowledged that he did not have any documentation of a loan agreement with his son.   He denied that the son had taken a loan on his (Mr. Bass's) behalf due to Mr. Bass's inability to obtain a loan.

{¶ 10}    Mr. Bass asserted that the loan had been for $38,000 or $39,000, and that the outstanding balance was $35,000, notwithstanding the many payments he had made. Mr. Bass claimed that the loan was being repaid through a third party by agreement with his son, and that only $57 per month was applied to principal.   Mr. Bass acknowledged that a bankruptcy petition he filed in 2010 had not listed his son as a creditor; he did not explain why his son was omitted from his list of creditors, and his unsecured debt was listed at $17,348 in his bankruptcy petition.

{¶ 11}    The credibility of the witnesses and the weight to be given to their testimony were matters for the trier of fact to determine.   The trial court found Mr. Bass's testimony on the subject of the loan "to be less than credible;" it did not expressly find that Mr. Bass's son made a gift to Mr. Bass, as Mr. Bass suggests.   The court cited the lack of documentation of the loan, Mr. Bass's failure to make significant progress in reducing the principal after three years of payments, and Mr. Bass's failure to list this debt on his bankruptcy petition.   The court concluded that Mr. Bass had "failed to prove that a debt exists to his son."   Although conflicting evidence was presented, the court did not abuse its

discretion in concluding that the existence of a loan had not been established.

*Second Mortgage on the Marital Home*

**{¶ 12}** Mr. Bass claims that he should not have been held liable for a second mortgage taken on the marital home by Ms. Smith while the divorce was pending, since he did not have knowledge of it or consent to it. Ms. Smith acknowledged that she used the loan for her "living expenses." Mr. Bass claimed that the loan violated the court's temporary restraining orders, and that Ms. Smith's financial misconduct should have been factored into the division of marital assets.

**{¶ 13}** A careful examination of the trial court's order demonstrates that Mr. Bass was not, in fact, ordered to pay any part of the debt connected with Ms. Smith's second mortgage on the house. The court valued the house at $219,410, based on the county's appraisal, which was provided by Ms. Smith; Mr. Bass did not present evidence of a different value. The first mortgage on the house was $142,805 at the time of the parties' separation. Using these numbers, the trial court concluded that the "marital equity in the property" at the time of the parties' separation was $76,605 ($219,410 - $142,805 = $76,605). The court awarded the house to Ms. Smith and awarded half of the marital equity, or $38,302.50, to Mr. Bass.

**{¶ 14}** The second mortgage amounted to approximately $24,000 at the time of the hearing. Ms. Smith testified that this was a home equity line that had been in existence for some time, rather than a new loan, but that she had not used the equity line until she incurred expenses during the divorce. She had used it to pay "living expenses and things of that nature." Because the court's calculations did not include or make specific reference to the

second mortgage, Mr. Bass's assertion that he was ordered to pay any portion of the second mortgage is unsupported by the record.

{¶ 15} Moreover, in a separate section of its judgment, the trial court addressed Ms. Smith's request for reimbursement for expenses she had paid while the divorce was pending. Ms. Smith claimed these expenses totaled over $56,000 from the time of the parties' separation through October 2012, and included many expenditures related to the marital home. (Ms. Smith paid spousal support, or mortgage payments in lieu of spousal support, from July 2011 through October 2012, when the parties agreed to suspend spousal support payments but to continue to accumulate the arrearage. While the divorce was pending, Mr. Bass was living in the marital home.)

{¶ 16} The trial court denied Ms. Smith's request for reimbursement of expenses. It stated that, because the court was awarding the house to Ms. Smith, she was receiving "a benefit from having paid down the mortgage obligation." It also noted that she "was more financially advantaged" than Mr. Bass during the course of the divorce, and thus that it was equitable to make her responsible for these expenses. Although the trial court did not expressly address the second mortgage, it did not include the second mortgage in its calculation of the parties' equity in the home, it concluded that it was equitable for Ms. Smith to bear more financial responsibility for the house during the pendency of the divorce, and it awarded the house to Ms. Smith; these determinations lead us to conclude that Ms. Smith was solely responsible for the repayment of the equity line.

*Value of Ms. Smith's Retirement Account*

{¶ 17} Mr. Bass contends that Ms. Smith did not adequately explain and/or

document the depletion of her IRA. Ms. Smith acknowledged that all of the funds in her IRA were earned during the marriage and that Mr. Bass was entitled to one-half of the value of the account.

{¶ 18} Ms. Smith testified that, at one time, her IRA account had a balance of $99,000, but it was valued at approximately $32,557 one month before the hearing. Ms. Smith testified that she had withdrawn $16,000 "to live on" and to pay the mortgage on the house while the divorce was pending, and she acknowledged that Mr. Bass was entitled to one-half of that amount. She attributed the decline in value of the account to the (mostly downward) fluctuation in the market.

{¶ 19} The trial court divided equally the value of the account at the time of the hearing ($32,557 ÷ 2 = $16,278.50) and awarded Mr. Bass an additional $8,000 to offset Ms. Smith's $16,000 withdrawal while the divorce was pending. Thus, the award to Mr. Bass for his share of Ms. Smith's retirement account was $24,278.50. The trial court did not expressly address the loss of value in the account, but it apparently credited Ms. Smith's testimony that she had not withdrawn any funds in excess of $16,000.

{¶ 20} Mr. Bass's attorney expressed some incredulity with respect to the losses on this investment, but Mr. Bass did not present any evidence to contradict Ms. Smith's explanation. Mr. Bass suggests in his brief that "the Trial Court should have placed a greater value on the IRA account," but he did not present any evidence to justify or support an alternate valuation. The trial court did not abuse its discretion in dividing this asset as it did.

*Marital Home and Condominium*

{¶ 21}    Finally, Mr. Bass contends that the trial court erred in awarding to Ms. Smith both the marital home and the parties' condominium (in which Ms. Smith's mother had lived for many years). Both parties had wanted the marital home, and Mr. Bass wanted to sell the condominium if he was not awarded the house.

{¶ 22}    Based on Mr. Bass's bankruptcy petition (Exhibit 38), Mr. Bass's income was $24,832 per year from disability payments; he did not provide documentation of his income or suggest that he had any other sources of income.  Ms. Smith believed that Mr. Bass's income exceeded $35,000 per year, based on disability and social security.  Mr. Bass was age 61.  The trial court concluded that Ms. Smith's testimony that Mr. Bass's income was $35,000 was credible.

{¶ 23}    The court found that Ms. Smith earned $34,000 per year through contract work with Advance Care; at the time of the hearing, she worked four days per week, and she claimed that the company was unable to give her more hours at that time.    The court noted that her income had been much higher in the past, but that an employment opportunity that she had held in the past – and the income derived therefrom – was no longer available to her; litigation was pending regarding the termination of her prior employment.  Ms. Smith was 53 years old.

{¶ 24}   The condo in which Ms. Smith's mother lived was valued at $26,260.  Ms. Smith's mother lived there but did not pay rent.  Mr. Bass did not want to be awarded the property, but asserted that he preferred to sell it than to have it awarded to Ms. Smith, especially if she was awarded the marital home.

{¶ 25}   In addition to the parties' incomes, several factors were relevant to the trial

court's award of the marital assets. The court noted that Mr. Bass had significant debts due to past convictions for tax evasion and welfare fraud, offenses for which he had served prison time. Ms. Smith was "harmless and blameless" with respect to these debts, and the court found that they were Mr. Bass's sole responsibilty. Mr. Bass claimed that a substantial portion of his IRS debt (once as much as $400,000) had been discharged in bankruptcy; it was unclear how much, if any, he still owed. He admitted owing $22,000 to the State. Mr. Bass claimed that he had contacted a bank for a loan of $100,000, but he did not provide proof that he had been approved for such a loan. The trial court expressed some doubt about whether Mr. Bass could obtain sufficient financing to pay Ms. Smith for her equity in the marital property and/or to refinance the house. It concluded that Ms. Smith was "more likely to be able to obtain financing to pay [Mr. Bass] his share of the equity."

{¶ 26}   With respect to both properties, the trial court stated that, if Ms. Smith was unable to pay Mr. Bass his share of the equity within 180 days, the property should be sold and the proceeds divided.

{¶ 27}   Considering all of the factors relevant to Mr. Bass's ability to obtain a loan, the trial court reasonably awarded the home and the condo to Ms. Smith and ordered her to pay Mr. Bass for his share of the equity in each property.

{¶ 28}   Under this assignment of error, Mr. Bass also discusses Ms. Smith's reduced income at the time of the hearing, as compared to a time a few years earlier when she was running a college health clinic and earning substantially more money. The clinic closed, and that particular employment is no longer available to Ms. Smith. Mr. Bass suggests that Ms. Smith has not diligently looked for full-time work since the clinic closed. However,

insofar as her income is comparable to Mr. Bass's, and the potential impediments to her obtaining financing are substantially fewer (e.g., criminal convictions, significant debt), it does not appear that her past income or any potential for greater income in the future is directly relevant to the trial court's award of the real estate assets.

{¶ 29} The assignment of error is overruled.

{¶ 30} The judgment of the trial court will be affirmed.

· · · · · · · · · ·

FAIN, J. and WELBAUM, J., concur.

Copies mailed to:

David M. McNamee
Jay B. Carter
Hon. Timothy D. Wood