[Cite as *State v. Warren*, 2020-Ohio-541.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-180649 |
| | | TRIAL NO. 18CRB-20579 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| ZIDKIJAH WARREN, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  February 19, 2020


*Paula Boggs Muething*, City Solicitor, *William T. Horsley*, Interim City Prosecutor, and *Jon Vogt,* Assistant City Prosecutor, for Plaintiff-Appellee,

*The Law Office of John D. Hill, LLC*, and *John D. Hill, Jr.*, for Defendant-Appellant.

**ZAYAS, Presiding Judge.**

{¶1}   Zidkijah Warren appeals his conviction, after a bench trial, for criminal damaging.  In one assignment of error, Warren contends that the trial court erred by improperly considering hearsay statements of the prosecutor that contributed to his conviction.  Finding merit to his assignment of error, we reverse the judgment of the trial court and remand the cause for further proceedings.

Factual Background

{¶2}   On August 7, 2018, Zidkijah Warren, who was residing in the Hamilton County Justice Center, was charged with criminal damaging, a misdemeanor of the second degree, for banging his head on his cell-door window and cracking the glass.  He pled not guilty and proceeded to a bench trial.

{¶3}   The state presented two witnesses, Deputy Timothy Eppens and Deputy Rick Johnson, both corrections officers at the Hamilton County Justice Center.  Eppens testified that while he was working, Warren requested his inhaler to help him breathe.  Eppens escorted the medical staff person to Warren's cell door and opened the pass-through.  The medical person handed the inhaler to Warren.  Instead of using the inhaler, Warren held it up in the air and held the button down.  Eppens could see the inhaler being sprayed into the air, so Eppens asked Warren three times to return it to him.  Warren refused, so Eppens told him that he had just lost his hour to be outside of his cell for refusing to hand him the inhaler.  In response, Warren smashed the inhaler and flushed it down the toilet.

{¶4}   Eppens notified his sergeant, and after his sergeant arrived, the two conducted a search of Warren's cell to ensure there were no inhaler pieces that could be used as a weapon.  As they were exiting from the pod, Eppens heard banging.  He turned around and saw Warren banging his forehead against the cell-door window

and immediately saw the window crack. Eppens further testified that the window had not been cracked when he was in the cell a few moments earlier. He saw the glass crack when Warren banged it for the second time. Johnson testified that he did not see the crack until Eppens pointed it out to him.

{¶5} On cross-examination, Eppens testified that he was on the lower level of the pod and Warren's cell was on the upper level approximately 20 feet from where he was standing. When asked who opened the cell door to conduct the search, he could not remember. When asked if the cell door could have hit the wall when it was opened, Eppens testified that it could have, but even if it did, the window itself would not have hit the wall. The state rested, and Warren testified on his own behalf.

{¶6} Warren testified he had asked for his inhaler the previous night, and the cartridge was empty. So when they brought him an inhaler the following day, he squeezed the inhaler to see if it was empty or contained a new cartridge. Eppens thought Warren was abusing the inhaler, so he threw it into the toilet and flushed it. Warren explained that he felt he had been unfairly punished because he was not abusing his inhaler, so he gave Eppens a reason to write him up. After he flushed the inhaler, Sergeant McKinney, who conducted a cell inspection, opened the cell door so hard, it hit the wall. Warren was immediately placed in handcuffs and escorted out of his cell to await the restraint chair. After the search was complete, the officers left the cell. Eppens, who was leaving the pod, turned suddenly and asked if the window was cracked. Warren then noticed the cracked window, and Eppens told him he would be facing a criminal charge.

{¶7} Warren denied banging his head against the cell-door window or against the door. He testified that he and Eppens did not see eye-to-eye, and that

Eppens's testimony that he was a difficult inmate to deal with was an accurate statement about his relationship with Eppens. He testified that the window was cracked from the outside after the sergeant forcefully opened the door into the wall.

{¶8} Warren was placed in a restraint chair and taken to the psychiatric unit for evaluation. Nurse Sade and Latrisha Lang evaluated him and determined that he did not need to be placed on a suicide watch. The trial court asked Warren if he had any bruising, swelling, or inflammation on his forehead, and Warren stated that he had no injuries.

{¶9} After Warren's testimony, defense counsel moved to introduce a certified copy of Warren's medical records from that particular day as an exhibit. The prosecutor objected to their admissibility because he had not seen the certification, and he questioned the validity of the certification. The prosecutor also stated that he had reason to believe there would be things in the medical records that would require cross-examination. Defense counsel proffered that the medical records would show that Warren did not have any bruising, red marks, or scrapes immediately after he allegedly banged his forehead on the window. He further argued that the medical records were self-authenticating due to the certification, but if necessary, he could try to get someone from the jail to verify the records.

{¶10} The prosecutor stated that based on his conversations with "the officers involved," the nurse who made the statements in the records had been "let go" from the Justice Center. He also stated that "it appeared she had a relationship with one of the inmates there, and it would appear that that inmate is the defendant." The court adjourned to chambers for further discussion.

{¶11} In chambers, the prosecutor stated it was his understanding that the

nurse who generated the medical records was the same person who allegedly had an intimate relationship with Warren. Defense counsel said he knew nothing about that, and that a nurse looked at Warren on the day of the incident. He also noted that none of the state's witnesses testified that Warren had sustained any injuries from the incident.

{¶12} The trial court sustained the objection and told the defense counsel to bring in a person to attest to the medical records. Defense counsel pointed out the certification to the trial court from the custodian that the records were true and accurate copies, but he would attempt to call an administrative person from the jail to testify.

{¶13} When they went back on the record, defense counsel informed the judge that the person running the medical department at the jail would testify. While waiting for the witness, the trial court heard other matters. Eventually, the state withdrew its objection to the authenticity of the records, but objected that the statements in the documents were hearsay. The court overruled the objection and allowed the medical records to be admitted, and the defense rested.

{¶14} On rebuttal, the state recalled Officer Eppens. He was asked whether the sergeant threw the cell door open or had anything to do with the cracking of the window. Eppens stated, "No." Notably, Eppens was not questioned about the nurse who allegedly was fired for having an improper relationship with the defendant. Eppens confirmed that Warren's cell was the last one on the top, and the door could hit the wall when opened.

{¶15} After closing arguments, the trial court stated, "based on the allegation by the prosecutor that there was an intimate relationship with the medical personnel,

it kind of taints the medical report. The finding is guilty."

## Standard of Review

{¶16} In his sole assignment of error, Warren argues that the trial court erred by relying on the statements of the prosecutor as evidence in reaching its verdict. Because the statements were inadmissible hearsay, we review for harmless error. *See State v. Sorrels*, 71 Ohio App.3d 162, 165, 593 N.E.2d 313 (1st Dist.1991). An error is harmless when "there is no reasonable possibility that the evidence may have contributed to the defendant's conviction. If the trier of fact, whether it be a jury or a trial judge, expressly relies upon hearsay statements in determining guilt, the admission of the hearsay is prejudicial." *Id.*

{¶17} The state requests that we employ a plain-error review because Warren did not object to the hearsay statements. However, the hearsay statements of the prosecutor were not admitted as evidence, so there was no opportunity for Warren to object. Rather, the statements occurred in argument by the state with regard to its objection to the certification and admissibility of the medical records, which was ultimately withdrawn. Until the trial court announced the verdict, the court's reliance on the hearsay statements was unknown to the parties.

## Reliance on the Prosecutor's Statements as Evidence

{¶18} In this case, the trial court treated the prosecutor's arguments regarding the authenticity and admissibility of the medical records as substantive testimony. Although the state also argues that the prosecutor merely proffered impeachment testimony, "A proffer is by definition, an offer of evidence." *Hocker v. Hocker*, 188 Ohio App.3d 755, 2010-Ohio-2835, 936 N.E.2d 1003, ¶ 43 (2d Dist.). If evidence is excluded, the substance of the evidence must be made known to the court

by offer to preserve an error for appeal. *Id.*, citing Evid.R. 103(A)(2). "The purpose of requiring the proponent of the excluded evidence to make an 'offer of proof' or 'proffer' regarding the evidence is to allow a reviewing court to determine whether the proponent of the evidence has been prejudiced by its exclusion." *Baird v. Gillispie*, 2d Dist. Miami No. 99-CA-12, 2000 WL 43493, *3 (Jan. 21, 2000).

{¶19} In this case, the trial court did not exclude any testimony proposed by the state. The state did not seek to present any testimony regarding the allegation that the nurse who created the medical records was fired due to an improper romantic relationship with Warren. Rather, the state presented arguments as to why the documents were inadmissible. Thus the statements were not an offer of evidence, and it was error for the court to consider and rely on the hearsay arguments of the prosecutor as admissible evidence.

{¶20} "Whether [the] error was harmless beyond a reasonable doubt is not simply an inquiry into the sufficiency of the remaining evidence. Instead, the question is whether there is a reasonable possibility that [admission of] the evidence * * * might have contributed to the conviction." *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 78.

{¶21} In reaching its verdict, the trial court expressly relied upon the prosecutor's admissibility argument to discount the medical records. The court's statement shows a reasonable possibility that the prosecutor's argument may have contributed to the conviction. *See id.* Because the trial court expressly relied on the prosecutor's statements, the conviction must be reversed. *See Sorrells*, 71 Ohio App. 3d at 165, 593 N.E.2d 313. Accordingly, we sustain the assignment of error.

Conclusion

{¶22} Finding merit to Warren's assignment of error, we reverse the

judgment of the trial court and remand the cause for a new trial.

Judgment reversed and cause remanded.

**BERGERON** and **CROUSE, JJ.**, concur.

Please note:

The court has recorded its own entry this date.