[Cite as *Bass v. Bass*, 2016-Ohio-596.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| RHONDA SMITH BASS | : | |
| | : | Appellate Case Nos. 26687 |
| Plaintiff-Appellee | : | 26800 |
| | : | |
| v. | : | Trial Court Case No. 10-DR-793 |
| | : | |
| MICHAEL C. BASS | : | (Civil/Domestic Relations Appeal |
| | : | From Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 19th day of February, 2016.

. . . . . . . . . . .

DAVID M. McNAMEE, Atty. Reg. No. 0068582, 2625 Commons Boulevard, Beavercreek, Ohio 45431
        Attorney for Plaintiff-Appellee

JAY B. CARTER, Atty. Reg. No. 0041295, 111 West First Street, Suite 519, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} In this consolidated appeal,[1] Michael Bass challenges two post-decree

---

[1] By order entered on September 1, 2015, we consolidated cases CA 26687 and 26800.

decisions and judgments of the Montgomery County Court of Common Pleas entered in the aftermath of his divorce from Rhonda Smith Bass[2]. Finding no error in either judgment, we affirm them both.

**Background**

{¶ 2} The parties were married in July 1998, and Rhonda filed a complaint for divorce in July 2010. The trial court entered a final judgment and decree of divorce on September 13, 2013. Michael appealed, and in June 2014, we affirmed. *Bass v. Bass*, 2d Dist. Montgomery No. 25922, 2014-Ohio-2667.

**The Order Concerning Real Estate**

{¶ 3} The parties owned real estate on Garvin Road and on Larona Road and two automobiles. The divorce decree orders Rhonda to pay Michael $13,130 for his interest in the Garvin Road property and $38,302.50 for his interest in the Larona Road property and orders that she pay him within 180 days. "Should Wife be unable to pay Husband for his interest within 180 days of the filing of this Decree," the decree states, "the real estate shall be listed for sale and the parties shall equally divide any proceeds from the sale of the real estate after all reasonable expenses incurred as a result of the sale." *Final Judgment and Decree of Divorce*, 2 (Sept. 13, 2013). With regard to automobiles, the decree states that Rhonda must pay Michael "the sum of $8,258.00 within 90 days of the filing of this Decree resolving the equity payments for both the 2010 Escalade and the 2002 Mercedes." *Id*. at 4. As a result, Rhonda had until December 12, 2013, to pay Michael for the automobiles and until March 12, 2014, to pay him for the real property.

---

[2] By court entry, Rhonda had her name restored to Rhonda Smith.

She didn't pay him anything.

**{¶ 4}** On March 25, 2014, Michael filed a motion captioned, "Motion to Show Cause, Request for Hearing and Demand for Sale of Real Estate," requesting that the properties be sold for nonpayment as ordered in the divorce decree. An evidentiary hearing was held before a magistrate, and the magistrate filed a decision overruling Michael's motion in its entirety. Michael filed objections with the trial court. On April 16, 2015, the trial court entered its decision and judgment, which Michael appealed in case number CA 26687.

**{¶ 5}** The sole assignment of error in the appeal states: "THE COURT ERRED IN IMPERMISSIBLY MODIFYING THE TERMS OF THE PARTIES' DIVORCE DECREE, WITHOUT JURISDICTION, BY REFUSING TO FORCE THE SALE OF PROPERTY IN ACCORDANCE WITH ITS EXPRESS TERMS."

**{¶ 6}** Michael had previously filed for bankruptcy. At the beginning of the hearing on Michael's show-cause motion, the magistrate noted that it "was aware that the bankruptcy case had been reopened and that a relief from stay, a new relief from stay, has been granted." (Sept. 10, 2014 Hearing Tr. 3). Attorney Wayne Novick testified that he is a licensed Ohio attorney whose practice consists of about 99% bankruptcies and that he has been practicing for about 35 years. He said that in early spring Rhonda consulted with him about Michael's bankruptcy. Novick reviewed the electronic case file and determined that Michael's bankruptcy case had been closed as a "no asset" case. Novick also reviewed the parties' divorce decree and determined that Michael "was entitled to receive a substantial amount of money. Which was not reported in the bankruptcy papers." (*Id.* at 8). Novick then referred to a December 30, 2010 agreed entry

granting relief from the bankruptcy stay. The entry allowed the parties to proceed with the divorce case but said that any assets remained subject to the bankruptcy court's jurisdiction. The roughly $60,000 that Michael was to receive under the divorce decree for the property and automobiles, according to Novick's reading, is not disclosed in the bankruptcy petition, and no amendments were filed. (*Id.* at 10).

**{¶ 7}** Novick testified that the bankruptcy was reopened sometime in June or July because the bankruptcy trustee believed that there were assets to distribute. A second relief from stay was granted on July 7, 2014, and states that Michael may proceed with the domestic-relations case but that any property received belongs to the trustee and is not exempt unless Michael files for a new exemption. Novick testified that, knowing these facts, he advised Rhonda to make the money that she owed Michael under the divorce decree available to the trustee or to turn it over to the trustee. Novick said that he had advised her counsel to hold onto the money and await direction from the trustee.

**{¶ 8}** On cross-examination, Novick said that Michael would be liable to the trustee if he received property and did not turn it over to the trustee under the relief-from-stay order. But he said that the order does not put any burden directly on Rhonda.

**{¶ 9}** Divorce counsel for Rhonda told the magistrate that there was an interest-bearing account through his office with a balance of $50,324. (*Id.* at 15).The magistrate said that he would accept the counsel's representation that around $50,000 was in an earmarked account through his office. (*Id.* at 25). Counsel said that Rhonda was willing to give the money in the account, and the rest of the money she owed Michael, to either the court or the bankruptcy trustee.

**{¶ 10}** Michael testified briefly. He asked the trial court to enforce a sale of the real

estate. He wanted to buy it: "I am in the position to buy the property today. I have the money to buy her out today." (*Id.* at 28).

{¶ 11} The magistrate concluded that the reopening of Michael's bankruptcy, and the advice that Rhonda received from counsel about what she should do with the money that she owed Michael, was a sufficient defense to a contempt finding. The magistrate also concluded that because most of the money was being held awaiting instructions, it was not necessary to order the sale of the real estate.

{¶ 12} The trial court disagreed with the magistrate's contempt conclusion. The court said that the advice of counsel was not a defense to contempt. The court found that Rhonda was in contempt but that she could purge it by paying the amount she owed Michael "directly to Michael within 60 days of the date of the filing of its decision." *Decision and Judgment*, 6 (April 16, 2015). The court agreed, though, that because most of the money was already in "escrow," it was improper to order the sale of the real estate.

{¶ 13} We note that in his earlier appeal of the divorce decree Michael contested the award of the real estate to Rhonda. So until our June 20, 2014 decision the disposition of the real estate was not settled. Unquestionably, it behooved Rhonda to request from the trial court a stay of the payments ordered pending appeal or to request direction concerning whether equity payments should be made directly to the bankruptcy trustee.

{¶ 14} Michael cites *Jakubek v. Jakubek*, 7th Dist. Mahoning No. 96 CA 130, 1998 WL 668164 (Sept. 18, 1998), and R.C. 3105.171(I) for the proposition that a court does not have jurisdiction to modify the terms of a divorce degree absent a reservation of jurisdiction. We agree. In *Jakubek*, the wife was ordered to refinance marital real estate within 90 days and pay the husband for his equity. The judgment entry included the

agreed upon remedy for failure to timely comply with refinancing—the property would be listed with a specific real estate agent and sold and the proceeds would be equally divided. After 90 days passed the wife filed a motion for an extension of time. A magistrate recommended an extension of about 30 days after the original deadline. Initially, the trial court approved the magistrate's decision, though a "timely objection" had been filed the day before. But later the court vacated its approval based on its conclusion that " 'the Court did not have the right to modify their agreement,' " which had become part of the judgment entry. *Jakubek* at *2 (quoting the trial court). On the wife's appeal, the appellate court concluded that the trial court did not abuse its discretion, quoting R.C. 3105.171(I) that "a division or disbursement of property or a distributive award under this section is not subject to future modification by the court."[3]

{¶ 15} Citing R.C. 3105.171(I), we too have held that a trial court does not have jurisdiction to modify a property division when there was no reservation of the authority to do so. *McConnell v. McConnell*, 2d Dist. Champaign No. 09-CA-43, 2010-Ohio-4757, ¶ 23. We have noted, however, that a court may clarify the meaning of its property-division order if an ambiguity exists. *Id.* at ¶ 24.

{¶ 16} We see many difficulties here in applying R.C. 3105.171(I)'s modification prohibition to the unique facts of this case. First, the wording of the sale remedy in the divorce decree applies only to payment for the real estate. The payment ordered for the

---

[3]The complete subsection R.C. 3105.171(I) now states: "A division or disbursement of property or a distributive award made under this section is not subject to future modification by the court except upon the express written consent or agreement to the modification by both spouses." The consent exception was added to the statute on July 8, 2010.

automobiles does not contain a sale provision. For the two parcels of real estate, Michael is owed $51,432.50 ($38,302.50 and $13,130). At trial, Rhonda testified that she would be able to promptly obtain $50,000, or whatever amount the court determined she was required to pay Michael for his equity, and deposit it with her attorney. Her attorney told the court, "We'll notify the court as well as opposing counsel when that is done." And the court responded, "Fine." (Trial Tr. 28). Counsel filed a "Notice of Receipt of Funds" on June 5, 2013, with a copy of a check payable to counsel in the amount of $50,000. This is consistent with counsel's representation to the magistrate that such a deposit was made, though the record is not clear whether the money remained on deposit with counsel the entire time until the motion hearing over a year later. Nevertheless, we believe that the court could reasonably conclude that virtually all the money owed for the real estate equity was secured or readily available.[4] Second, the wording of the sale remedy in the divorce decree is that the real estate would be sold "[s]hould Wife be unable to pay Husband." The record reflects that Rhonda *was* able to pay Michael, but she elected not to do so, pending advice from a bankruptcy attorney or an order of the bankruptcy court, for which behavior she was found in contempt. Third, Michael does not really want the real estate sold and the proceeds split; he wants to buy the real estate. "I am in position to buy the property today," he said at the hearing, "I have the money to buy her out today." (Sept. 10, 2014 Hearing Tr. 28). Michael's buying the real estate is not part of the sale

---

[4]  Our summary of the docket for CA 26687 contains filings made until May 13, 2015, after the appealed decision of April 16, 2015. On May 4, the trial court filed an entry and order stating that Rhonda's counsel had placed the $50,000 with the bankruptcy trustee pursuant to an order of the bankruptcy court. The trial court found that the disposition of those funds will be adjudicated by the bankruptcy court and that thereafter either party may file for further relief in the domestic relations court.

remedy in the divorce decree. Fourth, the trial court here did not change the potential remedy, like in *Jakubek* or *McConnell*. Rather, the court determined that given the unique circumstances the remedy was not applicable or should not be enforced. Finally, we note that the *Notice of Relief from Stay* filed on July 11, 2014, says that "[t]he debtor agrees that any such property [resulting from the divorce case] is considered property of the bankruptcy estate." For these reasons, we conclude that the court had jurisdiction to act as it did and it did not abuse its discretion in doing so.

{¶ 17} The assignment of error in CA 26687 is overruled.

**The Order Concerning Michael's Claimed Missing Personal Property**

{¶ 18} On October 27, 2014, Michael filed a motion seeking "to verify the inventory of the parties' personal property, to recover his jewelry, and to force the plaintiff to list the time share for sale." *Motion for Hearing on Inventory, To Return Personal Property and for Sale of Time Share* (Oct. 27, 2014). An evidentiary hearing was held before a magistrate, and the magistrate filed a decision and order. Michael filed objections with the trial court, and the court issued its decision on July 17, 2015. The court ordered the return of Michael's unspecified jewelry and ordered the sale of the time share. As to the personal property, the court added some items to the inventory list for the parties to divide under Mont. D.R. Rule 4.40(C) and found that the rest of the items were not "missing."

{¶ 19} Michael appealed this order in case number CA 26800.

{¶ 20} The sole assignment of error in this appeal, which relates only to items of personal property that Michael claims were "missing," states: "THE COURT'S DECISION WHICH FAILED TO HOLD RHONDA BASS ACCOUNTABLE FOR THE RETURN TO MICHAEL BASS OF THE ITEMS MISSING FROM A PROPERTY INVENTORY WAS

AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 21} Michael testified that on September 27, 2014, an inventory of personal property was done at the marital residence, as ordered in the divorce decree. An agreed order had been entered that set the scheduled inventory and its parameters. Michael testified that there were items missing, which items are listed on Defendant's Exhibit M. The list contains several pieces of furniture, pieces of artwork, and a washer and dryer. Michael signed the list saying they existed; Rhonda signed it saying that they never existed. Based on the items' purchase prices, Michael claimed that they were worth $5,768, but there was no testimony about the items' current fair market value. Mysteriously, when Michael was asked if he wanted to be compensated by Rhonda for the missing items, if in fact they existed, he said no. He said that he wanted them back in the house so that they could be divided.

{¶ 22} Rhonda testified that she was gone from the marital residence for "two years and two months." (Dec. 11, 2014 Hearing Tr. 26). She said that at first she went to the house to check her mail but she stopped when Michael obtained a restraining order. Rhonda said that the acrylic art pieces were there when she left and not there when she returned. She denied taking any of the missing items. Rhonda said that when she returned to the house after the divorce the washer was leaking and not working so she bought a new one. Rhonda also said that she gave Michael many items of furniture in 2013, after the divorce. Rhonda said that at the inventory she offered to let Michael take his jewelry and personal belongings, but he refused.

{¶ 23} The entire dispute here boils down to nine items listed on Exhibit M, which Michael confirmed represents all of his claimed missing property. (*Id.* at 17). These items

are a red acrylic art piece, two acrylic cocktail tables, four suede chairs, a rust-colored sofa, two black living room chairs, three black bar stools, a washer and dryer, and two acrylic art pieces. Rhonda testified that in her possession are one red cocktail table, two black couches, and an acrylic art piece. The trial court ordered that these items be added to the inventory for division.

{¶ 24} The court found that Michael had access to the marital home from 2011 to 2013 and was living there exclusively at the time of the divorce. Rhonda did not live there then. When she moved out she took one of the cocktail tables and left the other behind. And when she left, the red acrylic art pieces and an acrylic stand with light were in the house. She said that she gave the four suede chairs to Michael in October. She also said that she has two black bar chairs but that they are not of the three that were left when she moved out. The rust-colored sofa, which Rhonda said they never had, or was the one that she referred to as red, is already on the inventory list. The trial court found that she replaced the washer and dryer when she returned to the home because they were not working. The court then concluded that all the items are accounted for or "went missing when Michael had possession of the marital residence." *Decision and Judgment*, 7 (July 17, 2015).

{¶ 25} "On a claim that a judgment is against the manifest weight of the evidence, a reviewing court is guided by the statement that 'judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.' *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus. Further, we must presume the findings of the trial court are correct because the trial judge

is best able to observe the witnesses and use those observations in weighing the credibility of the testimony. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 81, 461 N.E.2d 1273." *Waggoner v. Waggoner*, 2d Dist. Greene No. 2002-CA-126, 2003-Ohio-4719, ¶ 10. For a manifest weight analysis a court of appeals "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001). "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact. * * * '[E]very reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.' " *Id.* at ¶ 21, quoting *Seasons Coal* at 80, fn. 3.

{¶ 26} Michael's argument is that the weight of the evidence regarding the missing items supports the conclusion that Rhonda is responsible, and that she should be held accountable for them. Michael asserts that her testimony from a previous hearing on his earlier motion to show cause, which accused her of removing furniture, household items, and jewelry from the residence, is inconsistent with her testimony at the hearing relevant to this appeal. On the previous show-cause motion, the trial court found that she had removed several items due to mold and water damage caused by a flood and that the removal of those items was likely necessary, not contemptuous. But the court also found that Rhonda had removed a red cocktail table, a red acrylic art piece, an acrylic night stand with light, a bedroom set with mirrored dresser, a flat screen television, speakers,

two black chairs, a red chair, and a security system. Rhonda said she had removed the items because she had moved and could not afford to purchase new items. But the court said that the removal of items to furnish a new household was no excuse and found her in contempt.

{¶ 27} It seems that the parties have been squabbling over substantially the same set of items for years.[5] Regardless, Michael's testimony—that Exhibit M represents *all* the missing items as of the inventory—is the limiting aspect of our review. Each of those items either has been accounted for or, as the trial court found, went missing during Michael's occupation of the home. It is apparent that the trial court believed Rhonda's testimony that the appliances had to be replaced, that she gave him the four chairs, that *her* bar stools were not *their* bar stools, that the red couch was the "rust" couch, and that the one or two remaining items went missing during Michael's occupancy. The court also believed Rhonda that she did not take the one or two remaining items. On this issue there is evidence to support the trial court's decision.

{¶ 28} Based on the reasonable conclusions of the trial court and our independent review and weighing of the evidence, we do not believe that the trial court's resolution of the issues here present "the exceptional case in which evidence weighs heavily against the [judgment]." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Accordingly, the assignment of error in CA 26800 is overruled.

{¶ 29} The appealed judgments of the trial court are affirmed.

---

[5] The inventory list completed on September 27, 2014, was not introduced as an exhibit at the hearing, but it is apparent that some items were returned.

. . . . . . . . . . . . . .

DONOVAN, P.J., and FROELICH, J., concur.


Copies mailed to:

David M. McNamee
Jay B. Carter
Hon. Timothy D. Wood