[Cite as *Manley v. Manley*, 2018-Ohio-255.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| KIM M. MANLEY, | ) | CASE NO. 17 CO 0006 |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| JAMES M. MANLEY, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:          Civil  Appeal from the Court of Common
                                   Pleas of Columbiana County, Ohio
                                   Case No. 2013 DR 660

JUDGMENT:                          Affirmed.

APPEARANCES:

For Plaintiff-Appellee:             Atty. Carl King
                                    115 West Lincoln Way
                                    Lisbon, Ohio  44432
                                    No Brief Filed

For Defendant-Appellant:            Atty. Dominic Frank
                                    Betras, Kopp & Harshman
                                    1717 Lisbon Street
                                    East Liverpool, Ohio  43920

JUDGES:

Hon. Carol Ann Robb
Hon. Gene Donofrio
Hon. Mary DeGenaro

                                    Dated: January 22, 2018

ROBB, P.J.

{¶1} Defendant-Appellant James Manley appeals the decision of the Columbiana County Common Pleas Court sentencing him to 20 days in jail for failing to purge his contempt by paying his delinquent spousal support owed to Plaintiff-Appellee Kim Manley. He contends the court abused its discretion as he started paying his current spousal support, started paying extra some months in order to reduce the arrearage, and proposed to pay the arrearage in full once a retirement account was released. For the following reasons, the trial court's judgment is affirmed.

STATEMENT OF THE CASE

{¶2} The parties' divorce trial was held before a magistrate on February 5, 2015. The magistrate issued a divorce decree on March 16, 2015, which was signed by the trial court the same day. Appellant was ordered to pay spousal support in the amount of $2,000 per month. The court retained jurisdiction to modify the spousal support. Appellant did not file objections to the divorce decree.

{¶3} On April 7, 2015, Appellant filed a motion to modify spousal support due to a change in employment circumstances. On July 22, 2015, Appellee filed a contempt motion against Appellant due to his failure to pay spousal support as ordered (and issues with the sale of the marital residence). The cross-motions were heard by the magistrate. On October 9, 2015, a magistrate's decision and judgment entry was issued, stating "At this point, the Court does not find the Defendant to be in contempt at this time, but makes the following orders * * *." After setting forth findings regarding the sale of the house, Appellant's motion to modify spousal support was denied on the basis that his income decrease was voluntary due to his early retirement. Appellant filed timely objections to the refusal to modify spousal support. On June 6, 2016, the trial court overruled Appellant's objections and adopted the magistrate's decision. Appellant did not appeal this decision.

{¶4} In the meantime, on February 29, 2016, Appellee filed another contempt motion for failure to pay spousal support as ordered. She also sought court costs and attorney fees. The hearing on the contempt motion proceeded on August

4, 2016. The magistrate released a decision on August 8, 2016, finding Appellant in contempt due to his arrearage of $27,232.15 and stating Appellant stipulated to the finding of contempt. Appellant was "given the opportunity to purge the contempt by promptly paying his delinquent spousal support, **in full**." (Emphasis original). Appellant was informed he could be sentenced to thirty days in jail, fined up to $250, and ordered to pay attorney's fees. The trial court signed the magistrate's decision, and Appellant was informed he could object under Civ.R. 53. Sentencing was held in abeyance pending a review set for September 26, 2016. This review hearing was continued on a joint motion.[1]

**{¶5}** The hearing proceeded on November 29, 2016. A magistrate's decision was released on December 5, 2016, which recommended a maximum sentence of thirty days in jail, a $250 fine, and $500 in attorney's fees. The magistrate found Appellant made payments of $2,448 on September 29, 2016 and November 9, 2016 and his arrearage was now $28,480.15. As to the maximum jail sentence, the magistrate found: "Defendant has willfully defied the orders of the Court concerning his spousal support obligation. That obligation commenced on April 1, 2015 and NO payments were made until September 29, 2016." The trial court signed the decision, and Appellant was informed of his right to object under Civ.R. 53. The jail report date was essentially held in abeyance as the matter was set for a sentencing review hearing before the trial court.

**{¶6}** At the January 12, 2017 hearing, the court observed that although Appellant made several payments, a limited portion went toward the arrearage. (1/12/17 Tr. 1). Appellee specified that only $800 went toward the arrearage since the magistrate's decision. (1/12/17 Tr. 2). Appellee said Appellant had assets to pay the arrearage, noting Appellant's counsel agreed he would use the parties' Ameriprise retirement account to pay the arrearage in full. (1/12/17 Tr. 2-3). She asked Appellant to put this promise on the record but opined he should go to jail as it

---

[1] Meanwhile, on October 17, 2016, Appellant filed a motion to terminate spousal support, which remained pending during the contempt proceedings.

was too late to make up for his blatant noncompliance with court orders. (1/12/17 Tr. 3).

{¶7} Appellant's counsel responded by noting Appellant's last four payments covered the $2,000 per month owed in current spousal support but left little available for the arrearage. (1/12/17 Tr. 3). Appellant argued efforts were made to put a QDRO (qualified domestic relations order) in place to release the Ameriprise account valued at over $200,000. Counsel said Appellant intended to use his half of the account to pay the arrearage. (1/12/17 Tr. 4). The court opined Appellee could name Ameriprise as a defendant to obtain an entry ordering the company to pay an additional amount directly to her before paying Appellant (if there was a concern he would not promptly pay the arrearage from the Ameriprise payout). Appellee pointed to the expense already incurred in collecting her support and to the QDRO which was already submitted to Ameriprise for pre-approval. (1/12/17 Tr. 5-7).

{¶8} The court reset the case for further review on February 17, 2017, stating: "if you receive that money from Ameriprise, or even if you don't, and that arrearage continues to be where it is without significant reduction, then there is a good chance that the Magistrate's 30 days in jail will be imposed against you. So I would encourage you to do whatever you can in the meantime to get that arrearage taken care of in this case; all right?" (1/12/17 Tr. 8-9). In a January 13, 2017 judgment entry, the court found the arrearage was only nominally reduced since the magistrate's December 2016 decision. The court said the parties were in the process of liquidating an Ameriprise account with a value of over $200,000. The court noted Appellant agreed to use his portion of the proceeds to pay the arrearage and was also attempting to liquidate assets for the same purpose. All prior orders not expressly modified were said to remain in effect.

{¶9} At the next hearing, Appellee's counsel noted Appellant was in willful contempt and had multiple opportunities to pay on his arrearage, noting the sale of the residence for over $200,000 and the proceeds of a property auction. (2/17/17 Tr. 2-3). Counsel pointed out how Appellant made no attempt to pay on the arrearage until September 29, 2016 and the payments were "too little, too late." (2/17/17 Tr. 2,

6). Appellee's counsel expressed frustration over Appellant's continual delay, disclosing the reason the magistrate's hearing was continued from September 26, 2016 to November 29, 2016 by joint agreement was because Appellant claimed he would obtain a loan to pay the arrearage before the hearing. (2/17/17 Tr. 7). Appellee indicated the arrearage was at $27,280.15. (2/17/17 Tr. 2). It was noted this was a decrease of $1,200 since the December 2016 magistrate's sentencing decision. Nevertheless, this arrearage balance was higher than when Appellant was found in contempt in August 2016, when the arrearage was $27,232.15.

{¶10} Appellant's counsel found it noteworthy the arrearage had not increased, meaning Appellant was paying the monthly obligation as it became due. (2/17/17 Tr. 3). He concluded Appellant made an effort to comply as he started paying "a little more" each month toward the arrearage. (2/17/17 Tr. 4-5). He explained they had hoped the Ameriprise account would have been released by this hearing. (2/17/17 Tr. 3-4). He said Appellant was amenable to an agreed entry ordering Ameriprise to pay the arrearage to Appellee from Appellant's half of the account before releasing it to him. (2/17/17 Tr. 5). Counsel also referred to the motion to terminate spousal support filed in October 17, 2016, observing if the court granted the motion and made the effective date the filing date, then the arrearage would be decreased (by four months of support). (2/17/17 Tr. 4).

{¶11} The court found Appellant failed to purge himself of the contempt, noting there had been payments but the issue was the arrearage, which was excessive and only minimally reduced. (2/17/17 Tr. 9). The court's February 21, 2017 entry reiterated the conclusion that the arrearage had not been significantly reduced since the magistrate's finding of contempt. Appellant was sentenced to 20 days in jail, fined $250, and ordered to pay Appellee's attorney's fees in the amount of $500. The within appeal followed.

## CONTEMPT

{¶12} "Any party who has a legal claim to any support ordered for a child, spouse, or former spouse may initiate a contempt action for failure to pay the support." R.C. 2705.031(B)(1). Civil contempt is a violation against the party who

was to benefit from the court order being violated. *The Docks Venture, L.L.C. v. Dashing Pacific Group, Ltd.*, 141 Ohio St.3d 107, 2014-Ohio-4254, 22 N.E.3d 1035, ¶ 15-16. Sanctions for civil contempt involve a conditional penalty with remedial or coercive purposes and intent to compel compliance with a court order or compensate the other party for losses; where the contemnor has the opportunity to purge a sanction, the contempt is considered civil. *Id.* A civil contempt action remains civil even after the contemnor fails to meet the conditions for purging and is then sentenced to jail. *Liming v. Damos*, 133 Ohio St.3d 509, 2012-Ohio-4783, 979 N.E.2d 297, ¶ 14-18.

**{¶13}** At the contempt hearing, an alleged contemnor has the opportunity to defend against the contempt charges, and the contemnor can then object to and/or appeal (depending on whether there was a magistrate) from the contempt finding and any purge conditions. *The Docks Venture,* 141 Ohio St.3d 107 at ¶ 20-23; *Liming,* 133 Ohio St.3d 509 at ¶ 30. The subsequent purge hearing is limited to evaluating whether the contemnor complied with the purge conditions; the contempt finding and purge conditions are not at issue at the purge hearing or the appeal therefrom. *The Docks Venture*, 141 Ohio St.3d 107 at ¶ 20-23; *Liming,* 133 Ohio St.3d 509 at ¶ 30.

**{¶14}** At either stage, inability to pay is a defense the contemnor has the burden of proving. *Liming,* 133 Ohio St.3d 509 at ¶ 20-21, 23 (bare assertions of inability to pay at purge hearing were considered insufficient without supporting evidence). An inability to pay the full amount ordered may not excuse an obligor's failure to pay a lesser amount. *McCree v. McCree*, 7th Dist. No. 08 MA 109, 2009-Ohio-2639, ¶ 18.

**{¶15}** The fact a party has a motion to modify or terminate support pending in a case does not allow the party to ignore prior court orders on support; even if the motion is subsequently granted, the acts in contempt remain. *See* R.C. 2705.031(E) ("The court shall have jurisdiction to make a finding of contempt for the failure to pay support and to impose the penalties set forth in section 2705.05 of the Revised Code in all cases in which past due support is at issue even if the duty to pay support has terminated"). *See also Barton v. Barton*, 2d Dist. No. 2016-CA-12, 2017-Ohio-980, ¶

76 (while an order for payment is in place, the obligor is required to follow it, and the failure to pay under the order can be punished as contempt regardless of whether the order is later reversed on appeal); *Hickox v. Hickox*, 4th Dist. No. 15CA15, 2016-Ohio-3514, ¶ 28 (adopting the quote: "Whether the Court might ultimately modify a support obligation is irrelevant, Mr. Hickox is obligated to at least make an attempt at paying the support when he has funds available.")

**{¶16}** Substantial compliance can also be asserted as a defense. *See generally State ex rel. Celebrezze v. Gibbs*, 60 Ohio St.3d 69, 75, 573 N.E.2d 62 (1991) (rejecting the contemnor's argument that he substantially complied with the order at issue); *State ex rel. Curry v. Grand Valley Local Schools Bd. of Ed.*, 61 Ohio St.2d 314, 315, 401 N.E.2d 925, 926 (1980) ("It is rudimentary that contempt will be excused by either actual or substantial compliance * * *"). For instance, at the contempt hearing, the contemnor can allege substantial compliance with the original order, and at the purge hearing, the contemnor can allege substantial compliance with the purge conditions.

**{¶17}** The trial court's decision on contempt is not to be disturbed in the absence of an abuse of discretion. *Gibbs*, 60 Ohio St.3d at 75. An abuse of discretion exists if the trial court's decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). A decision is unreasonable if it is unsupportable by any sound reasoning process. *See AAAA Ents., Inc. v. River Place Community Urban Redev. Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990) (abuse of discretion review typically involves a determination of whether a decision was unreasonable). "When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court." *In re Jane Doe 1*, 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181 (1991).

ASSIGNMENT OF ERROR

**{¶18}** Appellant's sole assignment of error provides:

"THE TRIAL COURT ABUSED ITS DISCRETION TO THE PREJUDICE OF THE APPELLANT-DEFENDANT WHEN IT FAILED TO CONSIDER HIS PROPOSAL FOR REPAYMENT OF THE ARREARAGE PRIOR TO SENTENCING HIM TO JAIL."

{¶19} Appellant contests the jail sentence of 20 days imposed by the trial court due to his failure to purge the civil contempt by paying his spousal support arrearage. The finding of contempt is not before us, and Appellant has not appealed the purge condition of paying the arrearage in full. In appealing the sentence, Appellant focuses on his implied requests at the final review hearing for more time. He also contends the trial court failed to consider his recent full payments toward his $2,000 per month spousal support obligation while trying to make payments on the arrearage despite the decrease in his monthly earnings to $669.75 per month from a pension.

{¶20} Appellant acknowledges this is not the place for contesting the spousal support ordered in the divorce decree or the denial of his motion to modify spousal support, neither of which was appealed. The magistrate ordered Appellant to purge his contempt sentence by paying the arrearage in full. The magistrate apparently believed Appellant had the means to do so. At the subsequent sentencing, the magistrate recommended a 30-day jail sentence. The trial court signed the magistrate's decision. We do not have the transcript of the August 8, 2016 contempt hearing before the magistrate and that decision is not before the court. And, we do not have the transcript of the November 29, 2016 sentencing hearing before the magistrate. Nor were those transcripts presented to the trial court for use at the review hearings. We must presume the regularity of those proceedings. *See State ex rel. Bardwell v. Cuyahoga Cty. Bd. of Commrs.*, 127 Ohio St.3d 202, 2010-Ohio-5073, 937 N.E.2d 1274, ¶ 14.

{¶21} Still, the matter was set for further review. At the two further review hearings, Appellant did not present evidence as to his financial condition or his ability to obtain financing pending the Ameriprise payout. *See Liming,* 133 Ohio St.3d 509 at ¶ 20-21, 23 (the contemnor has the burden to prove the defense of inability to pay at the purge hearing, and bare assertions, with no supporting evidence, are

insufficient to establish the defense). Counsel merely stated Appellant was making an effort as he had been paying his current obligation for the past four months and adding a little toward the arrearage. As Appellee pointed out to the trial court, Appellant received a large payment when the marital residence sold for over $200,000. She also pointed out Appellant had the option of obtaining a loan in order to comply with the court's orders and he indicated he would do so which is why they continued the magistrate's purge hearing. Appellant did not dispute these observations but gave the impression he preferred to wait for a pending account payout. However, his preference is not the court's standard, especially by the time of the final hearing.

{¶22} Appellant believes the trial court failed to consider his offer at the final hearing, on February 17, 2017, to stipulate to an entry ordering Ameriprise to pay Appellee the amount of the arrearage owed to her out of Appellant's half of the account before releasing his share. Contrary to Appellant's contention, the trial court did not summarily dismiss his purported proposal. This topic was raised at the January 12, 2017 hearing, when *the court* mentioned joining Ameriprise as a defendant in order to issue an order and ensure Appellant did not delay payment any further after the account was released. The court was informed the QDRO had already been prepared and was already at Ameriprise for pre-approval. Appellee also stated she did not wish to expend any additional money in ensuring Appellant complied with court orders (by adding a defendant, for instance). The court thus considered the issue at the prior hearing. The court then provided Appellant with more than five additional weeks. During this time, Appellant could hope the account was released and formulate a back-up plan ready to be implemented if the account was not released by the time of the hearing. However, there was no indication Appellant engaged in any remedial actions between the trial court's hearings besides making a $400 payment toward his arrearage.

{¶23} Appellant suggests it was unreasonable to sentence him to jail instead of allowing him to continue to wait for distribution of the Ameriprise account. However, he overlooks the additional time the court provided as it was. We also note

the second chance he was given in the October 9, 2015 magistrate's decision, when he was not held in contempt on Appellee's July 2015 contempt motion for failure to pay spousal support. Still, he made no effort to comply in response to the denial of his motion to modify spousal support or in response to Appellee's second contempt motion filed on February 29, 2016, which was not heard until August 3, 2016. According to uncontested findings, Appellant's first effort at complying with the court orders took place on September 29, 2016 (more than seven weeks after the contempt hearing where he was advised he could purge his contempt by paying the arrearage in full). And, this first attempt was merely the payment of one month's support plus $448.

**{¶24}** Moreover, the Ameriprise account had been divided evenly by the March 16, 2015 divorce decree. There is no indication Appellant sought a QDRO to access this money until sometime after the magistrate sentenced him to jail. Additionally, Appellant's arrearage increased from the August 4, 2016 contempt hearing (when it was $27,232.15) to the November 29, 2016 hearing (when it was $28,480.15). Although the trial court signed the December 5, 2016 sentencing entry, the case was scheduled for further review and a jail report date was not set. Appellant was given more than five weeks until the trial court held a review on January 12, 2017. During this time, the arrearage decreased by $800 from the November hearing, but the arrearage balance was still more than it was at the time of the August contempt hearing. Upon the trial court's January 2017 review, Appellant was then provided another five weeks to obtain funds to apply toward the arrearage. Still, the arrearage at the final hearing was no less than it was at the time of the contempt hearing. (It went from $27,232.15 in August 2016 to $27,280.15 in February 2017.)

**{¶25}** In accordance, Appellant did not purge his contempt. As the trial court opined, any attempts to comply by paying on the arrearage were minimal. Appellant failed to substantially comply with the purge order. Any inability to pay defense was not established at the hearing before the trial court. Furthermore, there is no indication the trial court failed to consider the arguments presented at the two review

hearings it conducted. Considering the totality of the circumstances, the trial court did not abuse its discretion in imposing upon Appellant a sentence of 20 days in jail (plus a $250 fine and $500 in attorney's fees). Appellant's assignment of error is overruled. Accordingly, the trial court's judgment is affirmed.

Donofrio, J., concurs.

DeGenaro, J., concurs.