[Cite as *Bass v. Bass*, 2019-Ohio-2746.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| RHONDA SMITH BASS | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28217 |
| | : | |
| v. | : | Trial Court Case No. 2010-DR-793 |
| | : | |
| MICHAEL C. BASS | : | (Domestic Relations Appeal) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 5th day of July, 2019.

. . . . . . . . . . .

DAVID M. MCNAMEE, Atty. Reg. No. 0068582, 2625 Commons Boulevard, Suite A, Beavercreek, Ohio 45431
        Attorney for Plaintiff-Appellee

JAY B. CARTER, Atty. Reg. No. 0041295, 111 West First Street, Suite 519, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} This case is the fourth appeal concerning the divorce of Appellant, Michael Bass, and Appellee, Rhonda Smith (also known as Rhonda Smith Bass).[1] According to Michael, the trial court erred in failing to enforce a May 2017 contempt order and a September 2018 agreed order. After reviewing the record, we find no error on the trial court's part. Accordingly, the judgment of the trial court will be affirmed.

## I. Facts and Course of Proceedings

{¶ 2} The parties in this case were married in 1998, and no children were born as a result of the marriage. In July 2010, Rhonda filed a complaint for divorce, and Michael filed an answer and counterclaim for divorce in September 2010.

{¶ 3} After an evidentiary hearing, the trial court issued an order in August 2013 granting a divorce and dividing the parties' assets. In the order, the court noted the parties' disagreement about personal property and ordered that an inventory be conducted by both parties with a third person present. After the inventory was completed, the parties were to divide the personal property items within 30 days pursuant to Mont. D.R. Rule 4.40(C). The final decree, which was entered on September 13, 2013, ordered the inventory and division as noted in the court's earlier order.

{¶ 4} Michael appealed from the final judgment and decree of divorce, challenging the trial court's division and distribution of marital assets. *See Bass v. Bass*, 2d Dist. Montgomery No. 25922, 2014-Ohio-2667, ¶ 4 (*Bass I*). He did not challenge the personal property division. Instead, "[t]he disputed issues were the value of [Rhonda's] retirement account, the disposition of a condo owned by the parties, on which there was

---

[1] To avoid confusion, we will refer to the parties by their first names.

no mortgage and in which [Rhonda's] mother lived, and the disposition of the marital home, on which there were two mortgages. Improvements had been made to the marital home; the parties also disputed whether these improvements had been made using funds loaned to [Michael] by his son, which the parties were obligated to repay." *Id.* at ¶ 5. We found no error and affirmed the trial court's judgment in June 2014.

{¶ 5} Thereafter, many post-decree motions and appeals were filed (mostly by Michael), resulting in the fact that litigation still continues in this minimal asset case, nearly nine years after the parties separated and the divorce complaint was filed.

{¶ 6} The second appeal, in 2015, concerned Michael's disagreement with two post-decree judgments. *See Bass v. Bass*, 2016-Ohio-596, 47 N.E.3d 224, ¶ 1 (2d Dist.) (*Bass II*). As pertinent here, Michael challenged a July 2015 trial court judgment, which had "ordered the return of Michael's unspecified jewelry and ordered the sale of the time share. As to the personal property, the court added some items to the inventory list for the parties to divide under Mont. D.R. Rule 4.40(C) and found that the rest of the items were not 'missing.' " *Id.* at ¶ 18. According to Michael, the court's judgment was against the manifest weight of the evidence. *Id.* at ¶ 20. After reviewing the evidence, we disagreed, stating that:

It seems that the parties have been squabbling over substantially the same set of items for years. Regardless, Michael's testimony – that Exhibit M represents all the missing items as of the inventory – is the limiting aspect of our review. Each of those items either has been accounted for or, as the trial court found, went missing during Michael's occupation of the home. It is apparent that the trial court believed Rhonda's testimony that the

appliances had to be replaced, that she gave [Michael] the four chairs, that her bar stools were not their bar stools, that the red couch was the "rust" couch, and that the one or two remaining items went missing during Michael's occupancy. The court also believed Rhonda that she did not take the one or two remaining items. On this issue there is evidence to support the trial court's decision.

(Footnote omitted.) *Id.* at ¶ 27. We, therefore, affirmed the judgment.

{¶ 7} *Bass II* was issued in February 2016. In May 2016, Michael filed a motion addressing several matters, including sale of the time-share, return of personal property, division of marital property, and payment of equity in real estate. He then filed a motion to show cause in August 2016, concerning Rhonda's alleged failure to pay him for his equity in the real estate and marital vehicles. A hearing was held concerning these matters in September 2016.

{¶ 8} In December 2016, the parties' counsel agreed that Rhonda and Michael would meet at Rhonda's residence, and a third party would divide the property pursuant to local rules. However, in January 2017, Michael filed another motion to show cause because Rhonda failed to be present on the agreed-upon date. Subsequently, in February 2017, the magistrate found Rhonda in contempt, stating that Rhonda had "repeatedly and persistently failed to cooperate with the procedure for a division of property which has contributed to this 'squabbling' persisting for yet another year." Docket for Third Appeal ("Third Appeal"), Doc. #57, p. 5.[2] The magistrate, therefore,

---

[2] Because this case has been appealed four times, the docket numbers are not sequential. For example, the docket summary for the first appeal contains 141 docket entries. There are 63 docket entries on the summary for the second appeal (which

found Rhonda in contempt and imposed a 30-day sentence and a $1,000 fine, which were suspended pending Rhonda's cooperation with a property division procedure. On May 22, 2017, the trial court overruled Rhonda's objections to the magistrate's decision. Rhonda did not appeal from that judgment. Michael then filed a motion on June 28, 2017, asking the court to impose sentence because Rhonda had failed to pay fees that were imposed. He did not mention the property division. *Id.* at Doc. #81. A hearing on that motion was set for September 7, 2017.

{¶ 9} In the meantime, in July 2017, a magistrate filed a decision on the motion that Michael had filed in May 2016, and the motion to show cause that he filed in August 2016. As noted, these motions involved Rhonda's alleged failure to pay the money the divorce decree ordered for the division of marital property, her alleged failure to list the time-share for sale, and her alleged failure to return a set of diamond cuff links to Michael.

{¶ 10} The magistrate found Rhonda in contempt because she made partial payment of around $51,000, but failed to pay Michael for his share of the value of the motor vehicles ($7,805.66). *See* Third Appeal, Doc. #84. However, the magistrate found insufficient evidence to establish that Rhonda failed to comply with the order to list the time-share for sale, or that Rhonda possessed diamond cuff links that Michael claimed to be entitled to possess. *Id.* at p. 3. Both parties filed objections to the magistrate's decision.

---

consolidated Michael's separate appeals from two judgments). The third appeal, which includes the decision being quoted in the main text, contains 117 docket entries on the summary. As a result, when we quote from a particular document, we will refer to the docket number used for the particular appeal, i.e., First Appeal, Third Appeal, etc. The two dockets for the consolidated appeals will be referred to collectively as "Second Appeal."

{¶ 11} As noted, the trial court had previously filed a judgment on May 22, 2017, agreeing with the magistrate that Rhonda was in contempt for failing to cooperate with the division of the parties' personal property. On September 7, 2018, the magistrate held a hearing on Michael's July 28, 2017 motion to impose sentence. An agreed order was then filed on September 8, 2017, acknowledging that Rhonda had paid the amounts imposed for contempt. The order further stated that Rhonda "acknowledges that the full purge conditions as set forth in paragraph 4 of the May 22, 2017 decision and judgment have not been met." Third Appeal, Doc. #103, p. 1. The order also stated that the matter would be heard before the trial judge (not the magistrate) on December 11, 2017, for consideration of imposition of sentence.

{¶ 12} As pertinent here, the part of the contempt order that was not fully purged was that "Rhonda may purge her contempt by cooperating with a property division procedure as previously ordered by this court to be scheduled through both counsel on a date within 14 days of this Decision and Judgment." Third Appeal, Doc. #77, p. 7 (paragraph 4).

{¶ 13} On November 16, 2017, the trial court issued a judgment finding that Rhonda's objections to the July 2017 magistrate's decision were well-taken. The court found Rhonda credible concerning the fact that she had paid the full amount of the property division award (around $59,000, plus more), to the bankruptcy trustee for Michael's bankruptcy. The court, therefore, concluded that Rhonda was not in contempt for failing to pay the total amount of the property division to Michael.[3] In addition, the

---

[3] Michael "had significant debts due to past convictions for tax evasion and welfare fraud" (matters in which Rhonda had no participation or liability). *Bass I*, 2d Dist. Montgomery No. 25922, 2014-Ohio-2667, at ¶ 25; First Appeal, Doc. #133, August 2, 2013 Decision,

court overruled Michael's objections. The comments the court made about the testimony indicate that that it found Rhonda more credible about the time-share and cuff links. Third Appeal, Doc. #110, pp. 5-6.

{¶ 14} The record does not indicate that anything occurred on December 11, 2017, i.e., either a hearing on imposition of sentence or an entry resulting from such a hearing. This may have been because Michael filed a notice of appeal challenging the November 16, 2017 judgment, which failed to find Rhonda in contempt in connection with her payment of the marital property division, the time share, and the diamond cuff links. *See Bass v. Bass*, 2d Dist. Montgomery No. 27832, 2018-Ohio-2043 (*Bass III*), ¶ 1-2.

{¶ 15} The trial court did file an entry on December 19, 2017, setting the sentence imposition matter for an in-chambers pre-trial on December 26, 2017. After that pretrial hearing, the court filed another order on December 26, 2017, stating that the property to be returned to Michael should be appraised and the value should be determined before a pretrial set for February 7, 2018. On February 13, 2018, the court then filed an entry setting a third pre-trial for March 2, 2018. The record does not indicate whether that pretrial occurred, as there is no subsequent entry in the record. In addition, nothing further occurred in the case until after we issued our opinion on May 25, 2018, affirming the trial court's judgment declining to find Rhonda in contempt. *Bass III* at ¶ 11-13.

{¶ 16} On May 29, 2018, the court set another pre-trial for June 4, 2018. However, the court again did not file an entry after the pretrial occurred. Subsequently, Michael filed a motion in July 2018, asking the court to issue a final appealable order on

---

pp. 8-9. Michael filed bankruptcy in November 2010 (several months after the divorce was filed), and his bankruptcy was later reopened for purposes of collecting money (around $59,000) that Michael had been awarded in the divorce decree. *Bass I* at ¶ 11.

imposition of sentence regarding "the hearing held on December 11, 2017." Fourth Appeal, Doc. #12, p. 1. As noted, the record does not indicate that anything occurred on December 11, 2017. In any event, the trial court held an evidentiary hearing on September 24, 2018, after we returned the original papers for *Bass III*.

**{¶ 17}** At the September 24, 2018 hearing, the trial court heard testimony from both parties. The court then filed a judgment on October 31, 2018, concluding that Rhonda had purged the contempt order. The court, therefore, declined to impose sentence. Michael appeals from that judgment, resulting in what is now the fourth appeal in this case.

## II. Alleged Abuse of Discretion

**{¶ 18}** Michael's sole assignment of error states that:

The Trial Court Erred in Failing to Enforce the May 22, 2017 Contempt Order and September 2018 Agreed Order at Issue in this Case.

**{¶ 19}** Under this assignment of error, Michael contends that the trial court's findings were factually inaccurate, were against the manifest weight of the evidence, and did not accord with established law.

**{¶ 20}** As a preliminary matter, we note that the only issue before us is Rhonda's alleged failure to purge the contempt, not the contempt order itself. The Supreme Court of Ohio has held that "a court order finding a party in contempt and imposing a sentence conditioned on the failure to purge is a final, appealable order on the issue whether the party is in contempt of court." *Docks Venture, L.L.C. v. Dashing Pacific Group, Ltd.*, 141 Ohio St.3d 107, 2014-Ohio-4254, 22 N.E.3d 1035, ¶ 23. As noted, Rhonda did not

appeal from the trial court's May 22, 2017 judgment finding her in contempt and imposing purge conditions.

{¶ 21} An additional appeal is allowed "on the question whether the purge conditions have been met following execution of sentence on the failure to purge." *Id.* at ¶ 23. "[A]t the time of the hearing on compliance with purge conditions the court [considers] whether the contemnor met the conditions or was prevented from doing so." *Id.* at ¶ 21. A party sentenced to purge conditions has the burden of showing that she complied with the conditions. *Kolano v. Vega*, 2016-Ohio-356, 58 N.E.3d 546, ¶ 20 (5th Dist.). In addition to impossibility, a party may also assert substantial compliance with purge conditions. *Manley v. Manley*, 2018-Ohio-255, 104 N.E.3d 183, ¶ 16 (7th Dist.), citing *State ex rel. Celebrezze v. Gibbs*, 60 Ohio St.3d 69, 75, 573 N.E.2d 62 (1991) and *State ex rel. Curry v. Grand Valley Local Schools Bd. of Edn.*, 61 Ohio St.2d 314, 315, 401 N.E.2d 925 (1980).

{¶ 22} After hearing the evidence, the trial court held that while Rhonda "may not have technically complied with the purge opportunity, * * * she substantially complied and made a good faith effort to do so." Fourth Appeal, Doc. #19, p. 3.

{¶ 23} We review the trial court's judgment for abuse of discretion. *Manley* at ¶ 17; *Ohio Child Support Enforcement Agency ex rel. Sutich v. Segedi*, 8th Dist. Cuyahoga No. 94309, 2010-Ohio-5360, ¶ 7.

{¶ 24} An abuse of discretion " 'implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). "It is to be expected that most instances of abuse of discretion will result in

decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). Decisions are unreasonable if no sound reasoning supports the decision. *Id.*

**{¶ 25}** As to the facts, when the trial court discussed the parties' testimony, it observed that:

> Rhonda testified that she has had an appraisal done and offered to pay Michael one-half of the share of the appraised value of the personal property. Rhonda testified that Exhibit 1 contains a complete list of all of the parties' marital property. Rhonda further testified that she has attempted to exchange personal property in the past, but Michael has not cooperated with her. Rhonda testified that she has tried to work with Michael to resolve this issue, but that he has been impossible to work with, and in fact, she feels that he has intentionally acted in a fashion that is impossible for her to comply with the court order regarding personal property division.

Fourth Appeal, Doc. #19 at p. 3.

**{¶ 26}** Michael objects to the comments about the fact that he has been impossible to work with and that Rhonda feels he has acted intentionally. According to Michael, Rhonda did not make these statements at the hearing.

**{¶ 27}** At the hearing on September 24, 2018, Rhonda described attempts she had made to divide the property after the September 8, 2017 agreed order (where she admitted to not having fully purged her contempt). Rhonda noted one instance where

Michael came to take pictures and write things down; another instance when an appraisal was done and she attempted to divide the property; and a time after that when Michael arrived with a truck and some people, but Peggy McCormick was not present. (McCormick was a person the parties had agreed to have present when the property was divided.) During the last instance, Rhonda told Michael that McCormick could come, but he refused and said he was just going to take Rhonda back to court. September 24, 2018 Hearing Transcript ("Tr."), pp. 13-14. In addition, Rhonda testified that she had tried to set up dates for Michael to get his marital property, and had even tried to divide the property by paying him for his share. *Id.* at p. 19.

**{¶ 28}** Rhonda did not specifically state that Michael was "impossible," or that he had acted intentionally. However, the clear inferences in Rhonda's testimony were that she made attempts to divide the property, that Michael was very difficult to deal with, and that Michael chose to take her back to court rather than cooperate. The latter point implied that Michael acted intentionally.

**{¶ 29}** The trial court's judgment was filed about a month after the hearing, and the transcript was not prepared and filed until January 4, 2019, which was after Michael had appealed. The court was obviously relying on its recollection of the testimony. Furthermore, given the circumstances, which include the court's repeated dealings with these parties over the course of more than eight years (at the time), the court had ample background for its conclusions.

**{¶ 30}** In this regard, the judge had previously found on more than one occasion that Michael lacked credibility and that Rhonda was more credible. *See* First Appeal, Doc. #133, August 2, 2013 Decision at p. 10 (Michael's testimony about an alleged loan

from his son was "less than credible"), and p. 13 (Rhonda was "more credible" on the subject of Michael's income); Third Appeal, Doc. #110, Nov, 16, 2017 Decision and Judgment at p. 7 (finding "Rhonda's testimony credible that she paid the full amount [of the martial equity] to the bankruptcy trustee, as she was directed"). Consistent with these decisions, the court found also Rhonda's testimony credible with respect to the matters at issue in this appeal. See Fourth Appeal, Doc. #19 at p. 3.

{¶ 31} Under settled law, reviewing courts defer to a trial court's findings about credibility. *DiPasquale v. Costas*, 186 Ohio App.3d 121, 2010-Ohio-832, 926 N.E.2d 682, ¶ 103 (2d Dist.). The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of fact to resolve. *Jenkins v. Jenkins*, 2012-Ohio-4182, 975 N.E.2d 1060, ¶ 19 (2d Dist.), citing *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. City of Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶ 32} Furthermore, "[a] court may choose * * * to believe the testimony of one witness over another. That [is] the court's prerogative, and trial courts are in the best position to assess credibility." *Baker v. Blevins*, 162 Ohio App.3d 258, 2005-Ohio-3664, 833 N.E.2d 327, ¶ 13 (2d Dist.). Thus, the court was not required to believe Michael.

{¶ 33} Michael also contends that the trial court erred when it found that Rhonda had provided him with a list of personal property. However, the personal property at issue has been known for years. *See Bass II*, 2016-Ohio-596, 47 N.E.3d 224, at ¶ 27

(noting that "[i]t seems that the parties have been squabbling over substantially the same set of items for years").

{¶ 34} According to the property appraisal, the value of the property in question was $6,150.  *See* Plaintiff's Ex. 1.  Rhonda testified that she had offered to purchase Michael's one-half interest in the property.  Tr. at p. 15.  Michael did not contradict this; instead, he testified that he had "no idea" if Rhonda had offered to pay him one-half of the appraised value of the items the last time they were at court.  *Id*. at p. 11. Accordingly, we find no abuse of discretion in the trial court's factual findings.

{¶ 35} Michael's next argument is that the court's judgment was against the manifest weight of the evidence.  In a manifest weight analysis, the court, after " 'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [fact-finder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the [judgment].' "  *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983).  *See also Bass II* at ¶ 25.

{¶ 36} "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact."  *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 21.  "Although *Thompkins* permits a reviewing court to consider the credibility of witnesses when addressing a weight of the evidence challenge, we nevertheless accord substantial deference to a fact finder's decision as to

which testimony to credit, and to what extent to do so." *Amerifirst Savings Bank of Xenia v. Krug*, 136 Ohio App.3d 468, 486-87, 737 N.E.2d 68 (2d Dist.1999), citing *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997).

**{¶ 37}** According to Michael, Rhonda has exhibited a pattern of vague and uncertain testimony throughout the case, and her testimony was contradicted by Michael's explicit testimony that he had never seen the appraisal she offered during the hearing. Michael also testified that Rhonda did not attempt to divide property between May 22, 2017 (the date of the contempt finding) and September 24, 2018 (the date of the purge hearing). The trial court apparently did not believe Michael, as it found Rhonda credible. As noted, the trial court did not have to believe Michael. *Bake*r, 162 Ohio App.3d 258, 2005-Ohio-3664, 833 N.E.2d 327, at ¶ 13.

**{¶ 38}** In view of our prior comments about the trial court's credibility findings, this case does not present the exceptional situation in which the judgment is against the manifest weight of the evidence. Neither party has been blameless over the nine-year history of this case. As is evident from footnote 2 above, the trial court dockets contain around 321 entries; this does not even account for the many documents filed in the course of the four appeals.

**{¶ 39}** Michael's final contention is that the trial court's judgment failed to accord with established law. His argument in this respect is perfunctory, but he essentially states that he established a prima facie case of contempt, that Rhonda had to show her inability to comply, and that intent to violate the court's orders need not be established.

**{¶ 40}** Errors of law are reviewed de novo. *Estate of Atkinson v. Ohio Dept. of Job & Family Servs.*, 144 Ohio St.3d 70, 2015-Ohio-3397, 40 N.E.3d 1121, ¶ 18. These

kinds of errors do not involve abuse of discretion, because courts are required to " 'correctly apply the law.' " *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 586, ¶ 5, quoting *In re Arnott*, 190 Ohio App.3d 493, 2010-Ohio-5392, 942 N.E.2d 1124, ¶ 42 (4th Dist.).

**{¶ 41}** As we said, the validity of the order finding Rhonda in contempt for failing to divide property is not at issue, due to Rhonda's failure to appeal. Consequently, the general case law Michael cites about establishing a prima facie case of contempt is irrelevant.

**{¶ 42}** In our prior remarks, we noted that in situations involving purge of contempt, courts may consider whether a party has substantially complied with a purge opportunity. *Manley*, 2018-Ohio-255, 104 N.E.3d 183, at ¶ 16. *See also Lorain Cty. Bar Assn. v. Paterson*, 112 Ohio St.3d 1214, 2007-Ohio-254, 860 N.E.2d 759, ¶ 2-3 (respondent had "substantially complied" with a purge order and was reinstated to the practice of law). The trial court found that Rhonda had substantially complied and made a good faith effort. Fourth Appeal, Doc. #19 at p. 3. This is consistent with the law. Accordingly, the trial court did not incorrectly apply the law.

**{¶ 43}** Based on the preceding discussion, Michael's sole assignment of error is overruled.


III. Conclusion

**{¶ 44}** Michael's assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies sent to:

David M. McNamee
Jay B. Carter
Hon. Timothy D. Wood